UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

U.S. MAGISTRATE COURT
JSM – SDTX
FILED

MAR 4 – 2012 CLR

David J. Bradley, Clerk
Laredo Division

EDDIE KLEPPINGER, JR.,                §
                                      §
          Plaintiff,                  §
VS.                                   §          CIVIL ACTION NO. L-10-124
                                      §
TEXAS DEPARTMENT OF                   §
TRANSPORTATION, *et al.*,             §
                                      §
          Defendants.                 §

## MEMORANDUM AND ORDER

Pending before the Court is "Plaintiff Eddie Kleppinger, Jr.'s Opposed Motion to Compel Discovery and Request for Sanctions and Brief" (Dkt. No. 70). Also pending before the Court is "Plaintiff's Request for Hearing on Plaintiff's Opposed Motion to Compel and for Sanctions" (Dkt. No. 71). The Court held a hearing in this matter on February 3, 2012. For the reasons set forth below, Plaintiff's motion to compel (Dkt. No. 70) is GRANTED IN PART AND DENIED IN PART. Moreover, Plaintiff's request for a hearing on his motion to compel (Dkt. No. 71) is DENIED AS MOOT.

## I.     LEGAL STANDARD

A party may obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense. FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevancy has been defined, for purposes of discovery, as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Thus, "relevancy is broadly construed, and a request for discovery should be considered

1

relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001)) (internal quotations omitted). However, "[c]ourts have also recognized that 'the legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied as to allow fishing expeditions in discovery.'" *Millennium Mktg. Grp., LLC v. United States*, 2008 WL 4461999, at *4 (S.D. Tex. Sept. 29, 2008) (citing *Sal Ciolino & Assoc. v. First Extended Servs.*, 2006 WL 1581248, at *2 (E.D. La. May 17, 2006)).

The Federal Rules of Civil Procedure direct the Court to limit the frequency or extent of discovery when the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. FED. R. CIV. P. 26(b)(2)(C)(i). The Court must also limit discovery when the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, and the importance of the discovery in resolving the issues. FED. R. CIV. P. 26(b)(2)(C)(iii). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 599 (1998).

"The burden is on the 'party who opposes its opponent's request for production to show specifically how . . . each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive.'" *SEC v. Brady*, 238 F.R.D. 429, 436 (N.D. Tex. 2006) (citing *Merrill*, 227 F.R.D. at 477) (quoting *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)) (internal quotations omitted). Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request

for discovery should be allowed. *Id.* at 437.  In some cases, however, if the request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking discovery has the burden to show the relevancy of the request. *Tara Woods Ltd. P'ship v. Fannie Mae*, 265 F.R.D. 561, 567 (D. Colo. 2010) (citing *Hammond v. Lowe's Home Ctrs. Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003)); *see Scottsdale Ins. v. Am. Re-Ins. Co.*, 2007 WL 405870, at *4 (D. Neb. Feb. 2, 2007) ("A party resisting facially overbroad or unduly burdensome discovery need not provide specific detailed support.").

Nonetheless, despite the overly broad nature of a discovery request, a party typically has a duty to respond to it to the extent the request is not objectionable and can be narrowed to an appropriate scope. *See Moses v. Halstead*, 236 F.R.D. 667, 672-73 (D. Kan. 2006).  Conversely, if inadequate guidance exists to determine the proper scope of an overly broad or burdensome request for discovery, this rule does not apply, and the Court will not compel further response from the party opposing the request. *Id.*; *see also Scottsdale Ins.*, 2007 WL 405870, at *4 (citing *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 665 (D. Kan. 1999)). Finally, "[d]iscovery in employment discrimination cases depends heavily upon the particular circumstances of the case." *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D. Kan. 2004) (citation omitted).

## II.    PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION

### A.    Plaintiff's Request for Original Documents

In Instruction No. 1 to Plaintiff's request for production of documents issued to Defendant, Plaintiff requests that Defendant produce originals of the documents requested, not copies. (*See* Dkt. No. 70, ¶ 65). According to Plaintiff, Defendant is obligated under the Federal Rules to provide original documents for Plaintiff "to inspect, copy, test, or sample . . . ." (*Id.* at ¶

68). However, the Court is aware of no authority "that the [F]ederal [R]ules *require* a party to produce original documents in order to satisfy its discovery obligations." *Rundus v. City of Dallas*, 2009 WL 3614519, at *3 (N.D. Tex. Nov. 2, 2009). Rather, "decisions addressing the question have found that a party may comply with Rule 34 by producing copies of documents requested in discovery." *Id.* (citing *Fin. Holding Corp. v. Garnac Grain Co.*, 1991 WL 221129, at *3 (W.D. Mo. May 21, 1991)); *see Verity v. Wells Fargo Bank*, 2011 WL 2940668, at *2 (Bkrtcy. D.N.J. July 19, 2011) (same); *see also Martin-Perry Corp. v. C.A. Bader Co.*, 16 F.R.D. 465, 465 (D. Conn. 1953) (denying defendant's motion to require plaintiff to produce original documents for inspection when defendant already had copies and a request for admission of genuineness would be a sufficient remedy); *Clinton v. Cal. Dept. of Corr.*, 2009 WL 1308984, at *6 (E.D. Cal. May 11, 2009) (stating that plaintiff could comply with court-order requiring production of documents by either providing copies of requested documents, or by producing his original documents for defense counsel to inspect and make copies deemed necessary). Nonetheless, Rule 34 authorizes inspection of original documents if the document request clearly requests the production of original documents for inspection. *Fin. Holding Corp.*, 1991 WL 221129, at *3.

In his motion, Plaintiff requests to inspect the original documents responsive to each and every document request. (*See* Dkt. No. 70, pp. 23-25). Specifically, Plaintiff argues that "alteration of documents by this Defendant through the acts of some of the other defendants, its employees, is one of the wrongful acts the Plaintiff alleges in his petition, which makes it imperative that he be permitted access to the original documents for inspection and copying." (*Id.* at ¶ 68). According to Defendant, it has produced over 5,000 pages of documents to Plaintiff

at its own costs.[1]  (*See* Dkt. No. 74, p. 4).  Defendant argues that it would be unduly burdensome for it to locate the original documents for each of the 5,000 pages of documents it has produced. (*Id.*).  Rather, Defendant proposes that "if Plaintiff needs to see the original document for a specific document or a small number of critical documents, then Defendant TXDOT can make this small number of original documents available, to the extent they still exist." (*Id.*).

Here, it is difficult for the Court to believe that it is necessary for Plaintiff to inspect all original documents that Defendant has produced.  At the hearing, the Court attempted to narrow the scope of Plaintiff's request for original documents.  Defendants agreed to have the Civil Rights Investigation File and the Management Directed Investigation File available for inspection.  (February 3, 2012 Hearing at 2:10:15).  Furthermore, Plaintiff agreed to travel to Austin to inspect the original documents.  (*Id.* at 2:09:00).  Nonetheless, the Court suggested that the parties wait to schedule a mutually agreeable date and time for Plaintiff's inspection of original documents in Austin until the Court issued an order on Plaintiff's motion to compel.  (*Id.* at 2:11:00).  The Court stated that it would be more efficient for Defendant to know what the Court expects for it to produce before Plaintiff makes a trip to Austin.  (*Id.*).

**B.    Defendant's Failure to Provide Plaintiff with a Privilege Log**

According to Plaintiff, Defendant has withheld documents subject to privileges, but has not provided a privilege log.  (*See* Dkt. No. 70, ¶ 72).  However, Defendant argues that because Plaintiff's requests are voluminous, overly broad, and lack specificity, Defendant cannot determine what specific documents are responsive to Plaintiff's requests.  (*See* Dkt. No. 74, p. 4).

---

[1] The Court notes that, under Rule 34, Defendant is only required to make the requested documents available for inspection and copying, and Defendant is not required to incur the costs of copying those documents for Plaintiff. *See Monarch Ins. Co. v. Spach*, 281 F.2d 401, 413 n. 30 (5th Cir. 1960) ("Ordinarily, [Rule 34] does not require the adversary to furnish copies."); *see also Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 620 (D. Kan. 2005) (stating that "under Rule 34, a responding party need only make requested documents available for inspection and copying; it need not pay the copying costs"); *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 297 (W.D.N.Y. 1996) ("Rule 34 allows the plaintiff 'to inspect and copy' relevant documents and does not require a responding party to pay for copying costs of voluminous materials.").

Thus, Defendant argues that it is not able to produce a privilege log under these circumstances. (*Id.*).

At the hearing, the Court ordered Defendant to provide Plaintiff with a privilege log. (February 3, 2012 Hearing at 2:12:15). Specifically, to the extent that Defendant can determine that a document is discoverable and responsive to Plaintiff's requests, and if Defendant is withholding that document on the basis of a privilege, Defendant must include it in its privilege log. (*Id.*). Defendant stated that it would provide the privilege log within fifteen days. (*Id.* at 2:12:30).

On February 17, 2012, Defendant filed its privilege log with the Court. (*See* Dkt. No. 111). As such, this issue appears to be resolved at this time. However, if Defendant withholds any additional documents on the basis of a privilege, Defendant must continue to supplement its privilege log.

### C.    Requests "Concerning the Allegations in the Complaint or the Answer"

Specifically, Plaintiff requests that Defendant: (1) "[i]dentify all persons who may have knowledge of facts concerning the allegations in the Complaint or the Answer;" (2) "[i]dentify all persons with who Defendant has communicated . . . concerning the allegations in the Complaint or the Answer;" (3) "[s]et forth in detail which allegations in the instant Complaint Defendant was aware of prior to receiving" Plaintiff's original complaint, and "[i]dentify [the employees] who were aware of such allegations or facts;" (4) "[d]escribe fully all communications of which Defendant is aware concerning the allegations in the instant Complaint or Answer;" (5) "[i]dentify . . . all employees of the Human Resources Department or Office of Civil Rights who were involved with the events alleged in the Complaint or Answer;" (6) produce documents "which [Defendant] believe[s] relate to any of the allegations contained in

Plaintiff[']s instant Complaint;" and (7) produce documents "which [Defendant] believe[s] supports any and all denials of the allegations in Plaintiff's instant Complaint."

The use of the term "concerning" in conjunction with the broad description "the allegations in the Complaint [or the Answer]" renders the discovery requests at issue facially overbroad. *See Moses*, 236 F.R.D. at 672-73 (sustaining overbreadth objection when the term "concerning" modified an "enormous amount of information, *i.e.*, all issues raised in the pleadings"); *see also Scottsdale, Ins.*, 2007 WL 405870, at *4 (same). This is especially true when the Court considers that Plaintiff's complaint is seventy pages long and consists of 210 paragraphs. (*See* Dkt. No. 40). Similarly, there are 210 responsive paragraphs in Defendants' amended answer to Plaintiff's second amended complaint. (*See* Dkt. No. 99). As such, Plaintiff's motion to compel is DENIED as to **Interrogatory Nos. 1, 2, 7, 8, and 12 and Request for Production Nos. 23 and 24.**

### D.      Identification of Trial Witnesses

Plaintiff requests that Defendant identify all persons Defendant intends to call as a witness at trial and give a summary of their anticipated testimony. (*See* Dkt. No. 70, ¶ 28). Pursuant to Federal Rule of Civil Procedure 26, parties must produce as part of their initial disclosures "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . ." FED. R. CIV. P. 26(a)(1)(A)(i). Rule 26 further requires that identification of trial witnesses be made at least 30 days before trial, unless the Court orders otherwise. FED. R. CIV. P. 26(a)(3)(A)(i). In the United States District Court for the Southern District of Texas-Laredo Division, each District Judge sets a deadline by which the parties must file their Joint Pretrial Order. *See* S.D. Tex. L. R. App. B. When filing their Joint Pretrial Order, the parties must identify their trial witnesses

along with a brief statement of the nature of their testimony, among other things. *Id.* However, the Federal Rules and the Local Rules do not specifically address whether a party can be compelled to disclose its trial witnesses during the discovery phase between the initial disclosures and the filing of the Joint Pretrial Order.

Case law addressing the issues suggests that, generally, a party cannot compel the opposing party to identify their trial witnesses during discovery. *See D'Onofrio v. SFX Sports Grp., Inc.*, 247 F.R.D. 43 (D.D.C. 2008) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2013 (2d ed. 1994)). However, a party wishing to obtain the identity of trial witnesses through discovery "must show a particular need for that deviation" from the general rule. *Id.* (quoting *Brock v. R.J. Auto Parts and Serv., Inc.*, 864 F.2d 677, 679 (10th Cir. 1998)).

Here, it appears that Plaintiff's interrogatory is premature. The deadlines for the Joint Pretrial Order and a trial date have yet to be set by the District Court. Understandably, Defendants have not yet identified their trial witnesses. (*See* Dkt. No. 81, p. 4). More importantly, Plaintiff has not demonstrated a particularized need for the identity of Defendants' trial witnesses at this time. As such, Plaintiff's motion to compel is DENIED as to **Interrogatory No. 3**. Nonetheless, Defendants are reminded of their obligation under Rule 26(e) to supplement their initial disclosures with the name of every person who may have discoverable information. *See* FED. R. CIV. P. 26(e)(1).

### E. Previous Discrimination Complaints Filed Against Defendant and/or Defendant's Employees

In the form of interrogatories and requests for production, Plaintiff attempts to discover information related to any employment discrimination complaints that have been made against Defendant and/or Defendant's current or former employees. The Court notes that Plaintiff's

requests are overbroad as drafted, and the Court can deny them on that basis alone.  However, in

attempting to determine an appropriate scope for the discovery of previous discrimination

complaints, the Court further notes that "[c]ourts generally allow discovery of other claims and

lawsuits against an employer that are sufficiently similar to the plaintiff[']s claims."  *Choate v.

Potter*, 2008 WL 906784, at *2 (N.D. Tex. Apr. 3, 2008) (citing cases).  "[E]vidence of other

acts of discrimination or retaliation similar to the discrimination or retaliation charged have been

admitted to show, for example, motive or intent.  By the same token, only discrimination or

retaliation of the same character and type as that is alleged is probative."[2]  *Sorrell v. D.C.*, 252

F.R.D. 37, 40 (D.D.C. September 2, 2008) (quoting *White v. U.S. Catholic Conference*, 1998 WL

429842, at *5 (D.D.C. May 22, 1998)).[3]

Moreover, additional limitations must be placed on the discovery of previous

discrimination complaints.

> A plaintiff's request for information about all discrimination actions filed against
> an employer sweeps too broadly, and courts must establish reasonable boundaries
> on the type of discovery permissible by limiting the discovery to the relevant time
> period, to the particular type of discrimination alleged in the complaint, and to the
> divisions or departments where the plaintiff and his/her supervisors worked.

*Dooley v. Recreation and Parks Comm'n*, 2009 WL 1939022, at *4 (M.D. La. July 6, 2009)

(quoting *Childers v. Slater*, 1998 WL 429849, at *4-5 (D.D.C. May 15, 1998)) (internal

---

[2] The Court notes that evidence of mere allegations of similar bad acts is not automatically admissible.  Even if the trial judge determines that the evidence is relevant to defendants' knowledge or intent, the evidence may be excluded under Federal Rule of Evidence 403 if the judge concludes that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, undue delay, waste of time, or needless presentation of cumulative evidence.

[3] *See Marchese v. Sec'y Dept. of the Interior*,  2004 WL 2297465, at *2 (M.D. La., July 16, 2009) (pursuant to Federal Rule of Evidence 404(b), "[e]vidence of other wrongs or acts may be admissible to prove, for example, defendant's motive, intent, plan, knowledge, or absence of mistake in an employment discrimination case"); *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 357 (5th Cir. 1995) (employment discrimination plaintiff was prevented from introducing evidence at trial of discriminatory acts and utterances of his supervisor that were directed toward other employees, when those acts and remarks were based upon different types of discrimination than the plaintiff was alleging; the proffered evidence concerning types of discrimination other than the disability discrimination that the plaintiff was alleging was irrelevant.).

quotations omitted).[4]   Put simply, courts should limit such discovery to employees who are "similarly situated" to the plaintiff.  *Dooley*, 2009 WL 1939022, at *4 (citing *Krystek v. Univ. of Miss.*, 164 F.3d 251 (5th Cir. 1999)).

Here, Defendant argues that it has produced information of previous complaints filed by other Travel Counselors in the Laredo Travel Information Center.  (*See* Dkt. No. 81, p. 42). Nonetheless, Defendant's interpretation of a "similarly situated" employee is too narrow for the purposes of discovery.

Regarding the proper geographic scope, the Fifth Circuit has stated that "in the context of investigating an individual complaint[,] the most natural focus is upon the source of the complained of discrimination[,] the employing unit or work unit.  To move beyond that focus[,] the plaintiff . . . must show a more particularized need and relevance."  *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (citations omitted).  Moreover, "numerous federal courts have held that in employment discrimination cases, the scope of discovery should be limited to the same department or office where the plaintiff worked. . . ." *Smith v. Detar Hosp. LLC*, 2011 WL 6217497, at *5 (S.D. Tex. Dec. 14, 2011) (citing multiple federal circuit and district court cases).[5]

---

[4] *See Gillum v. ICF Emergency Mgmt. Servs., LLC*, 2009 WL 2136269, at *3 (M.D. La. July 16, 2009) ("In employment discrimination cases, discovery is usually limited to information about employees in the same department or office absent a showing of a more particularized need for, and the likely relevance of, broader information . . . Courts within the Fifth Circuit have typically limited such discovery in terms of time, substantive scope, and geographical scope."); *Marchese*, 2004 WL 2297465, at *2-3 (in a case of allegations of discriminatory failure to promote, retaliation and Equal Pay Act violations, limiting plaintiff's ability to discover other claims of discrimination by the defendant to the same form of discrimination, in the same department or agency where plaintiff worked, and for a reasonable time before and after the discrimination complained of).

[5] *See, e.g., Rubenstein v. Adm'r of the Tulane Educ. Fund*, 218 F.3d 392, 397-97 (5th Cir. 2000) (in professor's discrimination and retaliation lawsuit, the district court did not abuse its discretion in limiting professor's discovery requests to his own department, rather than allowing broader discovery into university-wide tenure and promotion decisions, where the record reflected that initial promotion decisions were made on a departmental basis, following by highly deferential review of these decisions by a school-wide tenure committee, and raise decisions were made based on the recommendation of the department chair to the dean); *Marchese*, 2004 WL 2297465, at *3 ("[D]iscovery in Title VII actions may appropriately be limited to employment units, departments, and sections in

> In determining the appropriate employing unit of the plaintiff alleging employment discrimination, courts look to the level of the supervisor or supervisors who are primarily responsible for the employment decision regarding the plaintiff and other similarly-situated employees. The rationale is that the motive and intent of the supervisors who made the employment decisions relating to the plaintiff and other employees is relevant to determining whether the employment decision was discriminatory.

*Owens*, 221 F.R.D. at 654 (citations omitted). Thus, "[w]hen the decision is made locally, discovery is properly limited to the plaintiff's local work unit." *Murphy v. Kmart Corp.*, 2008 U.S. Dist. LEXIS 104467, at *22 (D.S.D. Dec. 27, 2008) (quoting *Burns v. Hy-Vee, Inc.*, 2002 U.S. Dist. LEXIS 23662, at *2 (D. Minn. Nov. 21, 2002)). Conversely, "[w]hen a plaintiff can show that the employment decision at issue was made by someone outside the local work unit, he is entitled to broader discovery." *Murphy*, 2008 U.S. Dist. LEXIS 104467, at *19 (quoting *Owens*, 221 F.R.D. at 653-54).

In this case, Plaintiff worked for Defendant as a Travel Counselor at the Texas Travel Information Center in Laredo, Texas. (*See* Dkt. No. 40, ¶ 17). There are approximately twelve to thirteen Travel Information Centers in Texas that are under the umbrella of the Travel Services Division located in Austin, Texas. (February 3, 2012 Hearing at 2:34:50). At the time of Plaintiff's employment, the Travel Services Division was headed by the Division Director, Doris Howdeshell, who was also in Austin. (*Id.* at 2:33:40).

According to Defendant, employment decisions, such as hiring and termination of employees, in the Travel Information Center in Laredo are ultimately made by a supervisor in Laredo and Ms. Howdeshell. (*Id.* at 2:26:15, 2:27:30, 2:32:55, 2:34:50). According to Plaintiff, however, there is centralized control of labor operations at the Texas Department of

---

which there are employees who are similarly situated to the plaintiff."); *Beasley v. First Am. Real Estate Info. Servs., Inc.*, 2005 WL 1017818, at *1 (N.D. Tex. Apr. 25, 2005) (granting plaintiff's motion to compel the production of formal and informal complaints of race discrimination or retaliation made against employees in the Dallas Information Systems).

Transportation. (*Id.* at 2:35:05). Specifically, Plaintiff argues that Defendant's policies require that Ms. Howdeshell "go through" the office of Human Resources ("HR") before reaching a final decision. (*Id.*). Plaintiff further argues that Ms. Howdeshell "is not authorized to take action on her own initiative to even issue anyone a verbal warning." (*Id.*).

In response, Defendant concedes that the HR office in Austin is involved in hiring and firing decisions, but review is highly deferential and done merely to confirm "that the hiring or firing is within policy." (*Id.* at 2:26:15, 2:30:40, 2:32:00, 2:34:50). Defendant further clarifies that Ms. Howdeshell "gets the recommendation [for an employment decision] from the supervisor in Laredo," then she makes the decision. (*Id.* at 2:35:32; *see* Dkt. No. 100, Ex. A, p. 11, Table[6] on "Taking Immediate Disciplinary Action"). Subsequently, Ms. Howdeshell "run[s] it by" or "consult[s] with" HR to confirm that the decision complies with policy. (*Id.* at 2:35:32; *see* Dkt. No. 100, Ex. A, Table on "Taking Immediate Disciplinary Action"). Put simply, Defendant argues that, beginning with the HR office and above, review of employment-related decisions is deferential. (*Id.* at 2:33:12). Here, in light of Ms. Howdeshell's direct involvement in hiring and firing decisions for Defendant's Travel Services Division, Plaintiff's work unit is limited to the Travel Services Division.

Moreover, the Court must limit Plaintiff's discovery request to a "relevant time period." According to Plaintiff, the first alleged discriminatory action took place on or about February 2008. (*See* Dkt. No. 40, ¶ 21). Plaintiff was ultimately terminated on February 23, 2011. (*Id.* at ¶ 142). Plaintiff seeks discovery of previous complaints beginning from October 1, 2006 to September 20, 2011. (*See* Dkt. No. 70, Ex. C, p. 3). Here, Plaintiff's proposed time limitation

---

[6] The table refers to decisions being made by "DE/DD/OD/RD." Because the Court was not provided with a key for these abbreviations, in the context used, the Court assumes "DD" is referring to "Division Director."

for discovery of previous complaints against Defendant is reasonable.[7] Further, Plaintiff has not

set forth any evidence to show an entitlement to discrimination complaints filed by employees

other than Travel Counselors, those employees that would likely be considered "similarly

situated" to Plaintiff.[8]   Finally, the Court finds that discovery should be limited to employment

discrimination complaints filed by Travel Counselors who have alleged discrimination based on

being a part of one of the same protected classes in which Plaintiff has alleged discrimination;

namely, the individual alleged discrimination based on being white (race and/or color), male,

and/or born in the United States.[9]  *See, e.g., Rubenstein v. Administrators of Tulane, et al.,* 58 F.

---

[7] *See, e.g., Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212-13 (D. Kan. 2002) (holding that documents relating to other claims against employer for sex and pregnancy discrimination or retaliation were discoverable, limited to a period of three years prior to the time the discriminatory conduct was alleged to have occurred and two years after the discriminatory conduct was alleged to have occurred, and stating that in the context of employment discrimination cases, courts have held that discovery of information both before and after the liability period may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and citing multiple federal circuit and district court cases); *Chatman v. Nat. R.R. Passenger Corp.*, 246 F.R.D. 695, 697 (M.D. Fla 2007) (limiting plaintiff's request for production regarding complaints of racial discrimination against supervisors to complaints going back to 1999, the year that plaintiff alleged he was first subjected to discriminatory conduct, to present); *Bell v. Hercules Liftboat Co., L.L.C.*, 2011 WL 6140680, at *1 (M.D. La. Dec. 9, 2011) (plaintiff's request for any and all information relating to allegations or complaints of discrimination or harassment before or after the allegations that were subject to the lawsuit was "plainly overly broad" and stating that defendant's response limiting such discovery to "the past three years" covered a reasonable time period  of time); *Dooley*, 2009 WL 1939022, at *4 (court limited *pro se* plaintiff's request to documents regarding complaints of retaliation and disability discrimination within the past five years and who were similarly situated to plaintiff).

[8] *See, e.g., Dooley v. Parks and Recreation for the Parish of East Baton Rouge*, 433 F. App'x 321, 326 (5th Cir. 2011) (upholding district court's decision limiting discovery to previous complaints of other employees who worked in similar positions as plaintiff because plaintiff failed to show that the district court's discovery ruling was arbitrary or clearly unreasonable); *Gillum*, 2009 WL 2136269, at *3 (plaintiff demonstrated that employees of the Homeowner Program of the Louisiana Road Home Program had sufficiently similar job functions to those in the Small Rental Program to be considered "similarly situated" for purposes of plaintiff's claim, and defendant did not come forward with any evidence or argument to refute that demonstration); *Dooley*, 2009 WL 1939022, at *4 (court limited *pro se* plaintiff's request seeking all discrimination complaints and investigations against defendant to documents regarding complaints of retaliation and disability discrimination within the past five years and who were similarly situated to plaintiff, *i.e.*, other employees who worked in similar positions to plaintiff at defendant's Capital Improvement Department); *Williams v. Chrysler Fin. Corp.*, 1999 WL 280437 (E.D. La. 1999) (limiting discovery requests of possible race discrimination complaints filed by "similarly situated" employees who were adjusters, the same job classification as plaintiff); *Rhyce v. Martin*, 2002 WL 31496375, at *3-4 (E.D. La. Nov. 6, 2002) (limiting plaintiff's request for documents relating to all gender discrimination claims filed against defendant to gender discrimination claims by present or former female employees because plaintiff failed to show that any other persons making such claims were similarly situated to her).

[9] To clarify, the relevant complaints of discrimination do not have to be based on the combined protected classes applicable to Plaintiff's complaint of discrimination.  For example, Defendant must produce all complaints of

Supp. 2d 702, 708 (E.D. La. 1998) (finding that discovery regarding possible discrimination of an individual of a different national origin than the plaintiff's national origin would be irrelevant); *Dixon v. Ashcroft*, 2001 WL 1910055, at *2 (W.D. Tenn. Nov. 21, 2001) (holding that "[a] plaintiff's discovery of past charges of discrimination against the same protected class of which he or she is a member could lead to admissible evidence of a predisposition to discriminate against the protected class.").

As such, Plaintiff's motion to compel is GRANTED IN PART and DENIED IN PART as to **Interrogatory Nos. 4, 5, 6, 13, and 14,** and **Requests for Production Nos. 16, 26, and 27**. Specifically, Plaintiff is only entitled to discovery of non-privileged information and documents of other employment discrimination complaints filed against Defendant by Travel Counselors in the Travel Services Division from October 1, 2006 to September 20, 2011, based on the fact that they are white (race and/or color), male, and/or born in the United States.  If either party contests this particular limitation, it must file a motion for reconsideration with the Court within 10 days of this Order citing relevant authority as to why the Court should alter its opinion.

### F.    Discipline of Other Employees

In these discovery requests, Plaintiff seeks information related to the discipline of other employees. Specifically, Plaintiff asks that Defendant identify all current and former employees that have been disciplined for (1) alleged misuse of Defendant's electronic mail or computer information systems resources, and (2) actual or potential violations of Defendant's confidentiality policies. Plaintiff further requests documents of current and former employees that were disciplined, demoted, or terminated from October 2004 to present.

---

discrimination brought by Travel Counselors within the relevant time period on the basis of being a male, not just on the basis of being a white male.

To rebut Defendant's assertion of a permissible reason for terminating Plaintiff's employment, Plaintiff must prove that the asserted reason was no more than a pretext, which can be demonstrated by circumstantial evidence. *See Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (citations omitted). Thus, trial courts in Title VII litigation consistently allow discovery of segments of personnel files, including disciplinary records, because of the importance of establishing pretext in discrimination cases. *Id.*; *see, e.g., Wilson v. Martin Cnty. Hosp. Dist.*, 149 F.R.D. 553, 555 (W.D. Tex. 1993) (stating that parts of defendant's personnel files "can be central to plaintiff's effort to prove pretext"); *Arters v. Univision Radio Broad.*, 2009 WL 1313285, at *3 (N.D. Tex. May 12, 2009) ("The court recognizes that '[a] plaintiff who must shoulder the burden of proving that the reasons given for [her] discharge are pretextual should not normally be denied the information necessary to establish that claim.'"). Nonetheless, such discovery is also limited to the plaintiff's work unit. *See, e.g., Corley v. La., Div. of Admin.*, 2010 WL 3328307, at *2-3 (M.D. La. Aug. 18, 2010) (stating that plaintiff's request for disciplinary documents of every employee in the Division of Administration was overly broad because plaintiff worked in the Office of Risk Management ("ORM"), and plaintiff failed to explain how documents pertaining to employees who worked throughout the entire Division, but did not work in the ORM, could possibly be relevant); *Smith*, 2011 WL 6217497, at *6 (plaintiff requested evidence of other employees who, like plaintiff, left work for less than a day arguing that if those employees were not all fired for "job abandonment," then a fair inference would be that defendants singled plaintiff out due to her recent sexual harassment complaint and/or FMLA protections; court held plaintiff's request relevant and reasonably calculated to lead to the discovery of admissible evidence, but limited request to the same divisional office that made decisions regarding Plaintiff's employment).

According to Defendant, it has reviewed the disciplinary records of all Travel Counselors employed in Defendant's Travel Information Division from October 2006 to 2011. (*See* Dkt. No. 81, p. 20-22). Defendant confirms that there were two employees who were disciplined for misuse of Defendant's electronic mail or computer information systems resources. (*Id.*). Defendant further states that documents relating to the disciplinary actions taken against these two employees were produced to Plaintiff. (*Id.*). Defendant confirms that there were no employees who were disciplined for a violation of Defendant's confidentiality policies. (*Id.*).

However, case law does not support a limitation of disciplinary records to those employees that were also travel counselors at the time of the disciplinary action. Rather, the Court will limit Plaintiff's requests to discovery of non-privileged information and documents regarding the discipline of other employees in the Travel Services Division from October 1, 2006 to September 20, 2011, for the same type of conduct that Plaintiff allegedly committed. As such, Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART as to **Interrogatory Nos. 17 and 18** and **Request for Production No. 15**.

### G. Investigation of Plaintiff's Complaints of Discrimination, Harassment and Retaliation

In these discovery requests, Plaintiff is attempting to acquire information related to the investigation of Plaintiff's complaints of discrimination, harassment, and retaliation. Pursuant to Rule 33, a party responding to an interrogatory may produce business records in lieu of responding to the interrogatory "if the burden of deriving or ascertaining the answer will be substantially the same for either party," and the responding party "specif[ies] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . ." FED. R. CIV. P. 33(d). Here, Defendant has referred Plaintiff to the Office of Civil Rights Investigation documents which are bate-stamped

as DEFS 001713-002313 and the Management Directed Review which are bate-stamped as DEFS 2344-2429.[10]

In response to Defendant's objection and response to Request for Production No. 2, Plaintiff argues that, although Defendant claims to have provided Plaintiff with the Office of Civil Rights Investigation documents and the Management Directed Review file, "Defendant only provided those portions it chose to provide." (*See* Dkt. No. 70, ¶ 92). According to Defendant, however, it has "produced the entire investigative file for the Civil Rights Investigation and the Management Direct Review" that was performed for Plaintiff. (*See* Dkt. No. 81, p. 27).

At the hearing, Defendant agreed to have both the original Civil Rights Investigation file and the original Management Directed Investigation file available for Plaintiff to review and copy in Austin. (February 3, 2012 Hearing at 2:09:00, 2:10:15). As such, Plaintiff's motion to compel is DENIED AS MOOT WITHOUT PREJUDICE as to **Interrogatory Nos. 9, 10 and 19**, and **Request for Production Nos. 2 and 5**. Those discovery requests should be resolved after Plaintiff is given an opportunity to inspect the investigation files.

### H.    Plaintiff's Time Records

According to Plaintiff, Defendant has produced the time sheets, but Plaintiff needs for Defendant to produce the work schedules, which would show the dates and specific times Plaintiff was scheduled to work. (February 3, 2012 Hearing at 2:38:15). Plaintiff asserts that there has been some information produced alleging that certain actions were taken on certain dates and at certain times. (*Id.* at 2:38:30). Plaintiff argues that it would not have been

---

[10] The Court notes that although Defendant refers Plaintiff to the file of the Management Directed Review, that file does not contain information regarding the investigation of Plaintiff's complaints of discrimination, harassment, and retaliation. Rather, it contains information regarding the investigation that Defendant conducted of Plaintiff's alleged misconduct.

physically possible for those actions to have happened at the date and time stated because he was not working at that time. (*Id.*). Plaintiff clarified that, although the time sheets are dated, they do not show a clock-in and clock-out time and only show the total number of hours worked by Plaintiff each day. (*Id.* at 2:39:10, 2:39:40).

According to Defendant, however, the work schedule only shows the time Plaintiff was scheduled to work and not the time Plaintiff actually worked. (*Id.* at 2:40:15). Nonetheless, Defendant agreed to produce Plaintiff's schedules for 2009, 2010, and up until Plaintiff's termination on or about February 23, 2011, to the extent those schedules still exist. (*Id.* at 2:40:50, 3:00:20). As such, **Request for Production No. 28** is DENIED AS MOOT WITHOUT PREJUDICE. This discovery request should be resolved after Defendant produces the above-referenced schedules.

## I.   Documents Specifically Signed by Plaintiff

Plaintiff is seeking production of any document that was signed by Plaintiff concerning the obtaining, the holding, or the termination of employment (*i.e.*, any warning, written write-up, reprimand, anything that would have led to an employment decision). (February 3, 2012 Hearing at 3:01:10). According to Defendant, it has produced Plaintiff's personnel file, his Disciplinary action file, and Plaintiff's close-out evaluation. (*See* Dkt. No. 81, p. 31). At the hearing, Defendant clarified that all responsive documents have been produced and would be contained in Plaintiff's personnel file. (February 3, 2012 Hearing at 3:02:23). At this point, there is no reason for Plaintiff to believe that Defendant has withheld documents regarding this request. (*Id.* at 3:02:35). As such, Plaintiff's motion to compel is DENIED AS MOOT as to **Request for Production No. 8**.

**J.    Documents Reflecting Defendant's Policies and/or Rules**

Plaintiff requests documents reflecting how and when Defendant's employees may be disciplined, demoted, or terminated.  According to Defendant, "[t]he rules concerning how and when employees may be disciplined, demoted or terminated are all set forth in [Chapter 9 of] TXDOT's Human Resources Manual."  (*See* Dkt. No. 81, p. 35; February 3, 2012 Hearing at 3:04:05).  Defendant further asserts that it has produced this manual for 2006 to 2011.  (*See* Dkt. No. 81, p. 35).  Defendant "does not know if Plaintiff is referring to any other rules . . . ."  (*Id.*).

However, Plaintiff argues that he "is aware of many more responsive materials the Defendant has not produced."  (*See* Dkt. No. 70, ¶ 117).  At the hearing, Plaintiff clarified that he believes there is a Supervisor's Guide to the Human Resources manuals, a Guide to Progressive Discipline (also known as "Development 220"), and "other documents of additional trainings that are provided to these supervisors that indicate what discipline is appropriate at what levels." (February 3, 2012 Hearing at 3:03:18).  However, the Supervisor's Guide to the Human Resources manuals and the Guide to Progressive discipline were the only specific titles that Plaintiff could identify. (*Id.* at 3:05:50).

In light of the fact that the employment policies Plaintiff seeks documentation of are all reflected in the Human Resources manuals, the Court will only compel Defendant to produce those additional manuals specifically identified by Plaintiff.  (*Id.* at 3:06:05).  Defendant agreed to have both guides identified by Plaintiff available for Plaintiff to inspect and copy, limited to the guides that were in effect during Plaintiff's time of employment.  (*Id.* at 3:04:50).

In addition, Plaintiff seeks documents reflecting any rule, policy, procedure or manual that applied to Plaintiff during his employment with Defendant.  The Court notes that Plaintiff's request is overly broad because it may encompass rules, policies, procedures, or manuals that are

irrelevant to the instant lawsuit and unlikely to lead to the discovery of admissible evidence. Nonetheless, Defendant produced the Travel Information Division Business Procedures Guide and the Travel Services Section Procedures Guide. (*See* Dkt. No. 81, p. 46). Defendant also states that it has the following manuals that are available for inspection and copying at a mutually agreeable date and time (in accordance with Rule 34): (1) Communications Manual; (2) Contract Management; (3) Highway Condition Report Manual; (4) Occupational Safety Manual; (5) Open Records Manual; (6) Printing and Document Services Manual; (7) Purchasing Manual; (8) Records Management; (9) Travel Manual; and (10) Voucher Manual. (*Id.*). Defendant further refers Plaintiff to the Human Resources Manual. (*Id.*). Defendant argues that it produced the applicable rules and regulations and the Human Resources Manual to Plaintiff. (*Id.* at p. 47).

Because Plaintiff fails to identify any specific rules, policies, procedures, or manuals that have been withheld by Defendant and that are reasonably calculated to the lead to the discovery of admissible evidence, the documents provided by Defendant should be sufficient to satisfy Plaintiff's request. As such, Plaintiff's motion to compel is DENIED as to **Requests for Production Nos. 14 and 31**.

### K.     Documents Regarding Plaintiff's Position and Duties

Through multiple requests for production, Plaintiff requests documents reflecting the qualifications, requirements, job duties, performance plans, performance evaluations, and salary information for a Travel Counselor (*i.e.*, Plaintiff's position) and for those positions that Plaintiff submitted an application of employment. In response, Defendant refers Plaintiff to his Personnel file as well as the job descriptions for Travel Counselors I, II, III, and IV and Travel Information Supervisor I, II, and III, the Travel Counselors Performance Plans, a Classification Change

Memo, Classification Salary Schedules, and compensation as contained in the Human Resources manual. (*See* Dkt. No. 81, pp. 38, 45).

However, at the hearing, Plaintiff clarified that he is seeking the performance plans for each of the fifty-three travel counselors. (*Id.* at 3:08:10). According to Plaintiff, he has first-hand knowledge of the fact that a performance plan is created for each individual travel counselor. (February 3, 2012 Hearing at 3:07:50). Defendant clarified that every employee draws up a customized performance plan with their supervisor. (*Id.* at 3:09:40; 3:10:25; 3:12:00). The performance plan describes the duties that are expected of that employee for the upcoming year. (*Id.* at 3:09:40). After the performance plan is approved by the supervisor, it is filed in each employee's personnel file. (*Id.* at 3:09:40, 3:15:15). While Defendant has produced the form used to create the performance plans, it has not produced the performance plans for each individual travel counselor. (*Id.*).

According to Plaintiff, an issue in this case is whether Plaintiff's classification and compensation were proper and having access to the performance plans would enable him to "see exactly where the classification should be in relationship to the other travel counselors." (*Id.* at 3:08:30). Plaintiff argues that "[t]he record provided by Defendant indicates that [Plaintiff] had more duties than other employees of the Defendant which were at a higher classification level." (*See* Dkt. No. 70, ¶ 123; February 3, 2012 Hearing 3:09:30, 3:17:14). Plaintiff further argues that "[t]he record also revels (sic) that Defendant Garza was applying an incorrect standard to [Plaintiff] in his performance plans." (*See* Dkt. No. 70, ¶ 123). According to Plaintiff, he "was at times classified as a[n] Administrative Assistant III, and as a Travel Counselor III, however, was being evaluated to the criteria for a Supervisor." (*Id.*).

Defendant concedes that Plaintiff's supervisor was indeed evaluating Plaintiff using the incorrect criteria. (February 3, 2012 Hearing at 3:19:15). However, after this situation came to light, Defendant checked the criteria the supervisor was using in evaluating the other travel counselors in Laredo, and Defendant discovered that the supervisor had also used the incorrect criteria for the other travel counselors in Laredo. (*Id.*).   In response, Plaintiff argues that if it was the wrong criteria for all travel counselors in Laredo, Defendant should produce the "comparable people" in other Travel Centers to determine the extent of the erroneous criteria. (*Id.* at 3:18:00).   According to Plaintiff, the Laredo travel counselors are not "comparable" because two out of three had filed complaints with the Equal Employment Opportunity Commission and the third travel counselor was the supervisor's "paramour." (*Id.*).   Defendant continues to maintain that the only similarly situated employees are travel counselors in Laredo. (*Id.* at 3:11:00).

Notably, Defendant's proposed limitation to evaluations of travel counselors in Laredo would not be responsive to Plaintiff's request.   Specifically, Plaintiff is seeking information to determine whether he was assigned more duties than what should have been assigned to any travel counselor in the Travel Services Division.   Thus, in light of the Court's ruling that similarly situated employees include all Travel Counselors in the Travel Services Division under the supervision of Division Director Doris Howdeshell, Plaintiff's motion to compel is GRANTED IN PART as to **Requests for Production Nos. 17, 18, and 29**.   Specifically, Plaintiff is entitled to discovery of the performance plans for each of the Travel Counselors in the Travel Services Division from October 1, 2006 to September 20, 2011.

**L.      Documents regarding Plaintiff's Achieving Service Excellence ("ASE") Training**

Plaintiff seeks various forms of information regarding the ASE Training provided to travel counselors throughout the state that was held in Waco, Texas, in December 2008.

*1.      Video of ASE Training*

Specifically, Plaintiff is requesting a video of the entire training. (February 3, 2012 Hearing at 3:24:43). According to Defendant, it has provided Plaintiff with two DVDs that were presented at the conference titled "TXDOT Shows: Down the Road" and "2005 Texas Travel Counselors Conference." (*See* Dkt. No. 81, p. 48; February 3, 2012 Hearing at 3:24:15). However, Plaintiff asserts that he has first-hand knowledge that the entire meeting was videotaped, as are all travel division meetings, that the video is made every year, and that the video is retained at each travel center. (*Id.* at 3:22:20, 3:26:55). Plaintiff further asserts that copies of the video are sent to all travel centers as reference materials and are preserved for those employees that cannot attend so that they can have access to the same information. (*Id.* at 3:27:50). Moreover, Plaintiff asserts that his request is relevant because Defendant claims to have instructed and cautioned Plaintiff at that time about the proper use of Defendant's e-mail system. (*Id.* at 3:22:00, 3:23:00, 3:25:28). According to Plaintiff, whether or not he was, in fact, instructed as such would be reflected in the video. (*Id.*).

In response, Defendant clarified that it did not instruct Plaintiff individually, but rather instructed all attendees on the proper use of the e-mail system and the confidentiality policy. (*Id.* at 3:26:20). However, Defendant's counsel claims that he has asked Defendant for the video of the entire training, but Defendant has stated that no such video exists. (February 3, 2012 Hearing at 3:25:00). Nonetheless, Defendant's counsel agreed to ask Defendant about the video for a

second time and to contact the other travel centers to ask whether they kept a copy of the video as asserted by Plaintiff.  (*Id.* at 3:25:00, 3:28:05).

### 2.    *ASE Training Budgets*

In addition to the video of the training, Plaintiff requests all monthly, quarterly and annual budgets, budget reports and expense reports relating to the training.    According to Plaintiff he is asking for the budgets because "there was disparate treatment," and Defendant has justified such treatment on the basis of the budget.  (*Id.* at 3:21:10).  Specifically, Plaintiff claims that out of the approximately fifteen to twenty travel counselors that attended this training, he was the only travel counselor that was required to drive "that distance" (from Laredo to Austin)[11] "and not go to Austin the day before the seminar."  (*See* Dkt. No. 40, ¶ 45).  Plaintiff claims that "[a]ll of the other travel counselors who had to go about the same distance either went [to Austin] the day before or flew to Austin the morning of the seminar."  (*Id.*).

Here, Defendant states that it has produced the class roster, the travel spreadsheet, and reimbursements provided to participants, among other documents.  (*See* Dkt. No. 81, p. 48). The Court notes that the seminar at issue for which Plaintiff claims disparate treatment by Defendant is *one* seminar, the ASE training held in Waco in December 2008.  Thus, Plaintiff's request for all monthly, quarterly and annual budgets and expense reports for the training is overly broad.  The documentation of reimbursements provided to other participants should be sufficient to establish any disparate treatment related to the allowance of travel expenses that may have occurred against Plaintiff.

As such, Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART as to **Request for Production No. 33**.  The request is GRANTED as to Plaintiff's request for the

---

[11] According to Plaintiff, although the seminar was held in Waco, Defendant planned for travel counselors from certain regions to meet in Austin. (*See* Dkt. No. 40, ¶ 43-44).

videotape of the ASE training.  Defendant is ORDERED to inquire about the existence of a videotape of the ASE training at other travel centers and to provide the videotape to Plaintiff, if it exists.  The request is DENIED as to Plaintiff's request for budget and expense reports.

**M.    Documents Regarding Plaintiff's Training of the Proper Use of Defendant's E-mail System**

At the hearing, the Court asked Plaintiff what other documents Plaintiff anticipates exist regarding his training on the proper use of Defendant's e-mail system.  (February 3, 2012 Hearing at 3:28:15).  According to Plaintiff, Defendant has not produced the Internet Security Manual ("ISM").  (*Id.*).  Defendant's counsel agreed to ask Defendant about the ISM and to produce the ISM, if it exists, from 2006-2011.  (*Id.* at 3:30:15).  As such, Plaintiff's motion to compel is GRANTED as to **Request for Production No. 34**, limited to the ISM, if it exists.

**N.    Multiple Documents Concerning Plaintiff and the Individual Defendants**

In Request for Production No. 1, Plaintiff requests multiple documents, "including, but not limited to: personnel files, investigation files, desk files, communications files, complaint files, grievance files and disciplinary files" that "concern, relate to, refer to and/or describe" Plaintiff and the individual Defendants.  The Court notes that, as drafted, this request is facially overbroad and could be denied on that basis alone.  However, at the hearing, Plaintiff clarified that the specific documents in contention are the training and disciplinary records of various supervisors named in this lawsuit.  (*Id.* at 3:31:40, 3:32:04).  More specifically, Plaintiff claims that he is seeking "certain information of previous Title VII violations on the part of various supervisors named in this suit." (*Id.* at 3:31:50).  Defendant responded that such information is not relevant because Plaintiff is not similarly situated to the supervisors.  (*Id.* at 3:32:47).

However, whether the supervisors in question are similarly situated to Plaintiff does not address whether previous discrimination complaints filed against those supervisors are

discoverable.   As discussed above in Section E, with regard to previous discrimination complaints, including Title VII violations on the part of the supervisors named in this suit, Plaintiff is only entitled to discovery of complaints filed by similarly situated employees. Specifically, previous complaints are discoverable limited to other employment discrimination complaints on the basis of Plaintiff's "race, sex, national origin, and/or color" that have been filed against Defendant and/or Defendant's current and former employees by Travel Counselors in the Travel Services Division from October 1, 2006 to September 20, 2011.   As such, Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART as to **Request for Production No. 1**.

### O.   Information Regarding the Positions for which Plaintiff Submitted a Job Application

Plaintiff requests documents regarding the hiring criteria of the positions for which Plaintiff submitted an application for employment.   Plaintiff also requests documents and tangible things "which comprise, constitute, relate, or refer to [Defendant's] files regarding the requirements, applications, qualifications, scores, abilities, and jobs skills for" all persons considered and/or hired for all positions that Plaintiff submitted an employment application. According to Plaintiff, he applied for a supervisor position at the following locations in Texas: (1) Denison, (2) Gainesville, (3) Anthony, and (4) Laredo.   (*See* Dkt. No. 70, ¶ 94).   Defendant asserts that it has already produced the Job Requisition Packet for each job that Plaintiff applied for, with the exception of the Anthony position, which was destroyed in accordance with the State's retention schedules.[12]   (*See* Dkt. No. 81, p. 28).   Defendant further clarifies that "many of the documents that relate to an application for employment at TXDOT, including the

---

[12] Although Plaintiff argues that "the records for the Anthony position were covered by a litigation hold notice," (*see* Dkt. No. 70, ¶ 94), a spoliation motion regarding these records has not been filed.   More importantly, whether those documents were improperly destroyed is irrelevant to the determination of Plaintiff's entitlement to those documents for purposes of discovery.

requirements, applications, qualifications, scores, abilities, and job skills for all persons considered and/or hired are kept in a Job Requisition hiring packet." (*Id.*).

Even assuming Defendant properly destroyed the Job Requisition hiring packet for the Anthony position as part of its retention policy, to the extent Defendant has *any* documents that reflect the "requirements, applications, qualifications, scores, abilities, and job skills" for the persons considered and/or hired for the supervisor position in Anthony, Defendant should produce those documents to Plaintiff. For example, Defendant presumably has the information (*i.e.*, scores, qualifications, resume, etc.) for the person that was ultimately hired for the Anthony position in that person's personnel file. Furthermore, Defendant presumably has access to the information of current or former employees that applied for the Anthony position.

Nonetheless, Plaintiff fails to specify why the documents produced by Defendant (*i.e.*, the Job Requisition packets) are insufficient to satisfy Plaintiff's request for production related to the other positions in Denison, Gainesville, and Laredo. As such, Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART as to **Request for Production No. 3 and 4**.

## P.    Any Communications/Documents Regarding Plaintiff

Although Plaintiff phrases each of these requests differently, Plaintiff basically requests any communications and/or documents regarding Plaintiff. However, again, these requests are facially overly broad and can be denied on that basis alone. *See Lopez v. Chertoff*, 2009 WL 1575214, at *2 (E.D. Cal. June 2, 2009) (finding that plaintiff's request for defendant to produce all documents "referring to [or] relating to [Plaintiff]" lacked reasonable particularity because defendant did not have reasonable notice of what is called for and what is not and the request called for a wide range of potentially related documents; noting that one of the purposes of Rule 34 is to prevent fishing expeditions); *see also Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D.

377, 381-82 (D. Kan. 2005) (stating that the use of terms such as "relating to," "pertaining to," or "concerning" does not necessarily make a request overly broad or unduly burdensome as long as these phrases modify a "sufficiently specific type of information").

In response to Request for Production No. 9, Defendant refers Plaintiff to his personnel file, Management Directed Review, and the Supervisor Files of Marco Salgado and Leo Garza. (*See* Dkt. 81, pp. 31-32). Moreover, Defendant states that "the documents concerning Plaintiff's job performance would be in his job evaluations (which are contained in his personnel file) or any investigation of his activities or in any supervisor files kept by his supervisors." (*Id.*). Defendant further argues that "[i]t would be unduly burdensome for Defendant and all of its employees to search for and find any document or e-mail that referred directly or indirectly to the daily work product of the Plaintiff for the 5 years he was employed with TXDOT." (*Id.*).

Nonetheless, Defendant has an obligation to conduct searches on any medium that is readily accessible. Moreover, Defendant has a duty to respond to Plaintiff's request to the extent the request is not objectionable and can be narrowed to an appropriate scope. *See Moses v. Halstead*, 236 F.R.D. 667, 672-73 (D. Kan. 2006). Here, Defendant appears to have conducted searches of the individual Defendants' e-mail accounts that were readily accessible using the term "Kleppinger." (*See* Dkt. No. 120, Ex. A, pp. 3-6). Based on the representations made by Kevin Wagner, the Manager of the Server and Infrastructure Services Branch for Defendant's IT Operations Division, it is unclear to the Court whether the e-mail results that are relevant or reasonably calculated to lead to the discovery of admissible evidence have been provided to Plaintiff or have been included in Defendant's privilege log. For example, for some of the Defendants, Mr. Wagner asserts that the Office of the Attorney General is reviewing the documents. (*Id.* at pp. 4, 6). For other Defendants, Mr. Wagner asserts that e-mails were found

on their account, but the e-mails concerned a variety of other matters or contained attorney-client communications. (*Id.* at pp. 5, 6).

Here, the Court believes that Plaintiff is entitled to more than Defendant simply searching its e-mail accounts. However, the Court is mindful of Defendant's representation that Plaintiff's name could appear on a vast number of routine electronic documents in its database, which have no bearing on the allegations in this lawsuit. Therefore, the Court ORDERS Defendant to produce any readily accessible ESI including, but not limited to e-mails, that are relevant to this lawsuit or that are reasonably calculated to lead to the discovery of admissible evidence.

To achieve this end, the parties are ORDERED to meet and confer by Friday, March 9, 2012, to agree on reasonable search terms for Defendant to utilize in its search for ESI. If the parties cannot agree on adequate search terms, then each party should submit an advisory to the Court by Tuesday, March 13, 2012, at 4:00 p.m., proposing search terms and why those search terms are reasonable considering the technology that comprises Defendant's computer systems. As such, Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART as to **Requests for Production Nos. 6, 9, 12, 13, 19, 22 and 25.**

### Q.     Documents Concerning Plaintiff's Employment/Termination

Plaintiff requests documents relating to Plaintiff's application for employment with Defendant, including his employment applications, and performance reviews, evaluations, and awards. Defendant represents that it has already produced Plaintiff's personnel file, which includes performance plans, reviews and evaluations, including his close-out evaluation. (*See* Dkt. No. 81, pp. 32-33, p. 39). Defendant further states that it "has produced each job application and each Job Requisition packet (which contains all of the applications of each applicant and their scores and criteria and which contains the screening documents) for each job

that Plaintiff applied for, except for the Anthony, Texas packet which was destroyed in accordance with the State's retention schedules." (*Id.*).

It is unclear to the Court why any of the requested documents would not be contained in Plaintiff's personnel file.  Specifically, there is no indication that responsive documents exist that have not been produced.  As such, Plaintiff motion to compel is DENIED as to **Requests for Production Nos. 10, 11, 20, and 21**.

### R.    Minutes of Staff Meetings

Plaintiff requests documents relating to staff meetings or minutes of staff meetings from October 2006 to present.  Defendant represents that it has produced the minutes for the staff meetings during this time period.  (*See* Dkt. No. 81, p. 46).  There is no indication that documents responsive to this request exist and have not been produced.  As such, Plaintiff's motion to compel is DENIED as to **Request for Production No. 30**.

### S.    All Documents/Communications of Work Environment, Etc.

This request is facially overbroad.  As drafted, this request for production does not provide Defendant with reasonable notice of what document production would be responsive to this request.  As such, Plaintiff's motion to compel is DENIED as to **Request for Production No. 32**.

### T.    Allegations of Plaintiff's Wrongdoing/Violation of Defendant's Policies

In the form of an interrogatory and a request for production, Plaintiff requests information supporting Defendant's allegations of Plaintiff's wrongdoing or violations of Defendant's policies.  Defendant refers Plaintiff to his personnel file, and the disciplinary action and close out evaluation that have been produced.  Defendant argues that it would be unduly burdensome to provide in detail every violation of a rule or policy by Plaintiff during this five-

year period. (*See* Dkt. No. 81, p. 12). However, without evidence of undue burden, it is unclear whether compliance with such a request would be unduly burdensome. Nonetheless, every violation or rule violated by Plaintiff that did not contribute to his termination or will not be used by Defendant at trial does not appear to be relevant.

Thus, in addition to the documents produced by Defendant, the Court ORDERS Defendant to provide Plaintiff with documentation or refer him to documents of (1) which specific rule(s) he allegedly violated that formed the basis for his termination; (2) any alleged rule violations Defendant will use to support any adverse employment actions it took against Plaintiff in defending this lawsuit; (3) in what form and by who Plaintiff was informed of this rule(s) (*i.e.*, Human Resources Manual, provided at a training, etc.); and (4) when Plaintiff was informed of this rule(s). As such, Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART as to **Interrogatory No. 11** and **Request for Production No. 35**.

### U.     Documents Supporting Defendant's Affirmative Defenses

Plaintiff requests documents supporting Defendant's affirmative defenses. According to Defendant, "[t]he requested documents are contained within the 5,000 pages of documents produced to Plaintiff and within the 7,000 pages of documents produced by Plaintiff . . . to Defendant." (*See* Dkt. No. 81, pp. 51-60).

Notably, "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ." FED. R. CIV. P. 33(a)(2). Such interrogatories are known as "contention interrogatories." *Alexander v. Hartford Life & Accident Ins. Co.*, 2008 U.S. Dist. LEXIS 27210, at *10 (N.D. Tex. Apr. 3, 2008). Although Plaintiff is seeking this information in the form of document production and not interrogatories, courts have interpreted Rule 34 to allow discovery of "contention" type documents, specifically

those documents supporting affirmative defenses. *See PIC Grp., Inc. v. Landcoast Insulation, Inc.*, 2010 U.S. Dist. LEXIS 143417, at *17-20 (S.D. Miss. Nov. 18, 2010) (citing Rule 33(a)(2), granting interrogatory and request for production relating to identification and production of documents defendant relies on to support any affirmative defenses it has raised); *Burnett & Morand P'ship v. Estate of Youngs*, 2011 U.S. Dist. LEXIS 36916, at *5-11 (S.D. Ind. April 4, 2011) (granting plaintiff's motion to compel responses to contention interrogatories and requests for production relating to defendants' affirmative defenses); *Bank of Am., N.A. v. Malibu Canyon Investors, LLC*, 2012 U.S. Dist. LEXIS 4263, at *10-11 (D. Nev. Jan. 12, 2012) (citing Rule 33(a)(2), granting plaintiff's motion to compel requests of production relating to documents supporting defendants' affirmative defenses). Responses to "contention" type discovery by identifying and producing documents supporting a party's position provides notice of the factual basis of a party's assertion in an informed and controlled manner. *See Burnett*, 2011 U.S. Dist. LEXIS 36916, at *9-10 (attorney faced with "contention" type discovery must identify witnesses and documents marshaled to support client's position and to help illuminate issues to be resolved); *Interplan Architects, Inc. v C.L. Thomas, Inc.*, 2010 U.S. Dist. LEXIS 17104, at *3 (S.D. Tex. Feb. 25, 2010) (ordering defendants to identify primary documents on which they rely to support affirmative defenses).

Thus, Plaintiff is entitled to request this "contention" type discovery that supports Defendant's affirmative defenses. As such, Plaintiff's motion to compel is GRANTED as to **Requests for Production Nos. 37-50**. The Court ORDERS Defendant to identify which documents within those previously produced that are responsive to Plaintiff's Requests for Production Nos. 37-50. *See Interplan*, 2010 U.S. Dist. LEXIS 17104, at *3; *Burnett*, 2011 U.S. Dist. LEXIS 36916, at *9-11; *Pandora Jewelry, LLC v. Cappola Capital Corp.*, 2009 U.S. Dist.

LEXIS 130601, at *7 (M.D. Fla. March 2, 2009) (recommending defendant's affirmative defenses and counterclaims be stricken for failure to comply with court discovery orders requiring defendant, in response to plaintiff's request for production, specifically identify documents in plaintiff's possession which supported defendant's counterclaims and affirmative defenses). Further, the Court acknowledges that three of Defendant's affirmative defenses relate to statutory caps on damages which may not require documents other than statutes and case law that Plaintiff can access on his own. Nonetheless, if there are no responsive documents, Defendant must specifically advise Plaintiff that no responsive documents exist.

### V.   Information Regarding the Prevention of Employment Discrimination and Retaliation

In Interrogatory No. 15, Plaintiff requests detail of any training provided to all of Defendant's employees regarding the prevention of employment discrimination and/or retaliation. This request is facially overbroad. Plaintiff has failed to show how *any* training provided to *all* employees is relevant to his specific claims of discrimination and retaliation.

In Interrogatory No. 16, Plaintiff requests that Defendant describe "fully and in detail" the steps Defendant took to prevent retaliation against Plaintiff after his complaints commenced. Because the individual Defendants implementing any steps taken to prevent retaliation would be most familiar with any steps taken, this interrogatory would be better addressed by the individual Defendants. The Court is of the opinion that the information sought in this interrogatory could be obtained from each of the individual Defendants through depositions or written discovery. As such, Plaintiff's motion to compel is DENIED as to **Interrogatory Nos. 15 and 16**.

### W.   Documents Supporting Position that Plaintiff Has not Suffered Damages

Plaintiff requests documents that support Defendant's contention that Plaintiff "has suffered no damages in connection with his employment ending with TxDOT." In response,

"Defendant contends that it did not discriminate or retaliate against Plaintiff." (*See* Dkt. No. 81, p. 30). Defendant further asserts that it "does not know what Plaintiff has suffered with regard to damages and [it] will not know the cause of Plaintiff's damages, if Plaintiff suffered any damages, until the Defendant takes the deposition of [] Plaintiff." (*Id.*).

It is difficult for the Court to determine what specific documents Plaintiff is attempting to discover in response to this request. This request is ambiguous and does not provide Defendant with reasonable notice of what Plaintiff is seeking. As such, Plaintiff's motion to compel is DENIED as to **Request for Production No. 7**.

## III.   ELECTRONICALLY STORED INFORMATION ("ESI")

Plaintiff requests that all ESI be produced in its native format without redaction of metadata. (*See* Dkt. No. 70, ¶ 73). In response, Defendant objects to the production of ESI to the extent that it requires Defendant to produce ESI that is not reasonably accessible, "as such production would cause an undue burden and cost on Defendant." (Id. at ¶ 74). Defendant further argues that "retrieval of ESI in its native format is very expensive and time consuming and a computer contractor will need to be hired to perform this function from tapes of archived e-mails." (*See* Dkt. No. 74, p.5).

On February 15, 2012, the Court issued an order requiring Defendant to file an affidavit in support of its "undue burden" argument. (*See* Dkt. No. 105, p. 4). The Court further ordered Plaintiff to file briefing with the Court on why he believes *all* reasonably accessible ESI must be produced in its native format with all associated metadata. (*Id.*). On February 27, 2012, Defendant submitted its affidavit in support of its "undue burden" argument. (*See* Dkt. No. 120). In accordance with the Court's February 15th Order, Plaintiff's briefing is due March 8, 2012.

(*See* Dkt. No. 105, p. 4). As such, the Court will rule on the pending ESI issues after Plaintiff submits the briefing required by the Court.

## IV.   PLAINTIFF'S REQUEST FOR SANCTIONS

In his motion, Plaintiff requests sanctions in the form of an award of the reasonable expenses he incurred in bringing his motion to compel. Federal Rule of Civil Procedure 37(a)(5)(A) provides for an award of expenses, including attorney's fees, only where a motion to compel has been granted in its entirety, which is not the case with the present motion. Since Plaintiff's motion will be granted in part and denied in part as set forth above, the reasonable costs and expenses incurred in connection with the motion will instead by apportioned between the parties under Federal Rule 37. Thus, each party will bear its own costs and expenses regarding this motion. *See* FED. R. CIV. P. 37(a)(5)(C).

## V.   CONCLUSION

Accordingly, "Plaintiff Eddie Kleppinger, Jr.'s Opposed Motion to Compel Discovery and Request for Sanctions and Brief" (Dkt. No. 70) is GRANTED IN PART AND DENIED IN PART. "Plaintiff's Request for Hearing on Plaintiff's Opposed Motion to Compel and for Sanctions" (Dkt. No. 71) is DENIED AS MOOT.

Defendant is ORDERED to respond to interrogatories or provide Plaintiff with responsive documents consistent with this Order. Finally, the parties are ORDERED to meet and confer **by Friday, March 9, 2012**, to agree on reasonable search terms for Defendant to utilize in its search for ESI. If the parties cannot agree on adequate search terms, then each party should submit an advisory to the Court **by Tuesday, March 13, 2012 at 4:00 p.m.**, proposing search terms and why those search terms are reasonable considering the technology that comprises Defendant's computer systems.

IT IS SO ORDERED.

SIGNED this 4th day of March, 2012.

J. SCOTT HACKER
United States Magistrate Judge