U.S. MAGISTRATE COURT
JSH – SDTX
FILED
JAN 0 3 2013  JSH
David J. Bradley, Clerk
Laredo Divison

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| EDDIE KLEPPINGER, JR., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 5:10-cv-124 |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| TRANSPORTATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is "Defendants Ebert, Serna, Saenz, and Ball's Motion to Compel Discovery," (Dkt. No. 156), filed May 14, 2012. Therein, Defendants argue that "[m]ost of Plaintiff's responses [to the interrogatories] are incomplete, vague, boilerplate, evasive, and lack specificity and violate the Federal Rules of Civil Procedure." (*Id.* at 1). Additionally, Defendants contend that "Plaintiff did not produce any documents in response to the [r]equest[s] for [p]roduction," (*id.*), and "did not specify any documents for each of the individual requests." (*Id.* at 14). Defendants therefore move the Court for an order compelling Plaintiff to "provide specific answers and responses," (*id.* at 1), and requiring Plaintiff to specify "which specific documents (by date or by bate stamp number) is [sic] responsive to each separate request for production." (*Id.* at 14). Plaintiff responded to the pending motion to compel on June 5, 2012,[1] arguing that the interrogatories are "unduly burdensome, overbroad, vague, and harassing" as well as "duplicative," but nonetheless supplements his responses to a number of the interrogatories and requests for production at issue. (Dkt. No. 160, ¶ 7). The Court held a

---

[1] Plaintiff also opposes Defendants' motion on the basis that they have failed to confer in good faith with him, pursuant to Federal Rule of Civil Procedure 37. (*See* Dkt. No. 160, ¶¶ 6, 39-44). However, the Court has previously addressed this contention and thus will focus on the substance of Plaintiff's responses to the discovery requests. (*See* Dkt. No. 184, at 4-6).

1

hearing on the instant motion on November 16, 2012, in order to determine what discovery issues were still outstanding with regards to the motion to compel. (*See* Nov. 16th Hr'g at 9:25-11:19 a.m.).

I.  **DISCUSSION**

At this point in the pretrial process, both of the parties are amply familiar with the legal standards governing the discovery process, (*see, e.g.*, Dkt. No. 128, at 1-3; Dkt. No. 122, at 1-3), and thus the Court feels it unnecessary to regurgitate the law here.  However, before addressing each individual interrogatory and request for production that remains unsettled, the Court begins with the simple proposition that discovery is intended to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616 (5th Cir. 1977) (citing *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)).  Mutual knowledge of all the relevant facts gathered by either party is essential to proper litigation and allows each party to knowledgeably evaluate the strength of both parties' evidence.  *Id.*  Bearing discovery's purpose in mind, the Court turns to the merits of the instant motion to compel.

A. **Plaintiff's General Objections**

Plaintiff objects almost unanimously to the interrogatories submitted to him by each Defendant by asserting in his responses that the interrogatory is either "overbroad, unduly burdensome, vague, ambiguous, and/or uses imprecise specifications," "unduly burdensome, overbroad, vague, and harassing," or some variation of the above-quoted language. (*See, e.g.*, Dkt. No. 160, Ex. 2, at 4-6).  Outside of the objections catalogued in his individual responses, Plaintiff also includes an additional three pages of boilerplate objections at the beginning of his

responses. (*See, e.g., id.* at 1-3). Plaintiff also echoes these boilerplate, generic objections in his responses to the individual Defendant's requests for production. (*See, e.g.*, Dkt. No. 156, Ex. 6).

The federal rules governing discovery mandate that a "party resisting discovery must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (internal quotation marks omitted) (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)) (noting the same standard applies to responses to production requests). District courts have therefore repeatedly held that boilerplate objections are insufficient, as specific, detailed objections are required in responding to any interrogatory or Rule 34 request. *Enron Corp. Savings Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009); *see Weems v. Hodnett*, No. 10-cv-1452, 2011 WL 3100554, at *1-2 (W.D. La. July 25, 2011) (concluding that plaintiff's general objections violate the letter and spirit of Rule 26(g), "are meaningless[,] and constitute a waste of time for opposing counsel and the court"); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Greystone Servicing Corp., Inc.*, No. 3-06-CV-0575-P, 2007 WL 4179864, at *2 (N.D. Tex. Nov. 26, 2007) (noting that defendant had "offered no argument, much less evidence, that any of the interrogatories [we]re vague and ambiguous, lack[ed] specificity, . . . or [we]re overly broad, harassing, and unduly burdensome," and thus concluding "[t]hese types of boilerplate objections are meaningless and insufficient under the federal rules"); *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) (finding that boilerplate objections to requests for production of documents lacked the requisite specificity); *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request.")

(citation omitted). Here, Plaintiff's boilerplate objections permeate nearly every response to the individual Defendant's discovery requests, and rarely, if at all, does Plaintiff provide the requisite evidence or explanation for his objections. As such, the Court is persuaded by other courts' treatment of such boilerplate objections and deems each of these repetitious objections overruled and will decline to consider them. *See, e.g., Weems*, 2011 WL 3100554, at *2.

### B. Defendants' Interrogatories

*1. Serna's Interrogatory Nos. 2, 8, 10, 14, 15, and 18*

Defendants object to Plaintiff's answers generally, arguing that he has failed to provide specific facts and dates, and also that Plaintiff does not point to any specific individuals or documents in his responses. Additionally, Defendants reiterated during the hearing that Plaintiff failed to explain "how [ ] Serna bec[a]me aware of the complaints" or when Plaintiff informed Defendant Serna about the hostile work environment or mental anguish that he was suffering. (Nov. 16th Hr'g at 9:44, 9:47 a.m.). As with several of the other interrogatories at issue, Plaintiff's answer was supplemented during the Court's hearing. Plaintiff clarified that Defendant Serna became aware of the complaints only through Defendant Saenz, that Plaintiff had minimal direct communication with Defendant Serna, and that Defendant Serna's alleged inaction is the sole basis for his liability. (Nov. 16th Hr'g at 9:44-9:54 a.m.).

Plaintiff also suggested to the Court that Defendants ought to have known these facts, referencing a page of Plaintiff's deposition transcript. (Nov. 16th Hr'g at 9:46 a.m.). However, Plaintiff's reliance on his deposition testimony is misplaced, as responses to interrogatories should avoid reference to discussions had during depositions. Rule 33 compels a party "to answer interrogatories even after his deposition has been taken." *Bell v. Swift & Co.*, 283 F.2d 407, 409 (5th Cir. 1960) (noting that the trial judge erred in not requiring the defendant to answer

4

the plaintiff's interrogatories after plaintiff had taken defendant's oral deposition). Further, the plain language of Federal Rule of Civil Procedure 33(b)(3) requires that "[e]ach interrogatory must . . . be answered separately and fully in writing under oath," Fed. R. Civ. P. 33(b)(3), so that the responding party is bound by its answer and the answer may be introduced into evidence. *Stiward v. United States*, No. CIV.A 05-1926, 2007 WL 2417382, at *3 (E.D. La. Aug. 24, 2007). Courts have interpreted this language to mean that it is "technically improper and unresponsive for an interrogatory to refer to outside material, such as pleadings, depositions, or other interrogatories." *Equal Rights Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 35 (D.D.C. 2007) (citing 7 J. Moore, *Moore's Federal Practice* § 33.103 (2d ed. 2006)); *see Union Pac. R. Co., a Del. Corp. v. Larkin*, 229 F.R.D. 240, 243 (D.N.M. 2005) ("Interrogatory responses that refer to depositions are not complete and not in compliance with rule 33 of the Federal Rules of Civil Procedure."); *Starlight Intern. Inc. v. Herlihy*, 186 F.R.D. 626, 640 (D. Kan. 1999) (noting that a party may not properly answer an interrogatory by referring generically to testimony given during a deposition); *Dana Corp. v. Am. Standard*, No. 3:92-CV-581RM, 1994 WL 228537, at *1 (N.D. Ind. April 15, 1994) (citing a number of cases in support of the well-established rule that an answer to an interrogatory must be "complete in itself and should not refer to the pleadings, or to depositions or other documents, . . . at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.") (citing 4A J. Moore, J. Lucas, *Moore's Federal Practice* ¶ 33.25[1] (2d ed. 1991)); *Martin v. Easton Pub. Co.*, 85 F.R.D. 312, 315 (E.D. Pa. 1980) (stating that "[i]ncorporation by reference to a deposition is not a responsive answer"); *J.J. Delaney Carpet Co. v. Forest Mills, Inc.*, 34 F.R.D. 152, 153 (S.D.N.Y. 1963) (finding that incorporation of portions of deposition by reference was not a responsive answer under the rule requiring

interrogatories to be answered "separately and fully"); *see also Stiward*, 2007 WL 2417382, at *4 (deciding that defendant's interrogatory responses which referred to various depositions did not satisfy Rule 33, thus requiring defendant to supplement its answers).

As previously noted, although these particular interrogatories were discussed at some length during the hearing, because each interrogatory must be answered separately and fully in writing under oath, Plaintiff is hereby ordered to supplement his responses to Serna's Interrogatory Nos. 2, 4, 8, 10, 14, 15, and 18. These responses should contain the same clarity that was elucidated during the hearing. Much of these supplemental responses might naturally mirror what was discussed during the hearing. However, when responding, Plaintiff should bear in mind that reference to any outside material is inappropriate.

### 2. Ball's Interrogatory No. 3

Defendants object to Plaintiff's response, in that he has "failed to provide specific information about how . . . Ball failed to follow rules and procedures or what rules and procedures were not followed or what specific documents were involved and what specific dates were involved." (Dkt. No. 156, at 9). Plaintiff asserts that he did in fact answer *"how* the respective Defendant failed to follow TxDOT's Rules and Procedures after becoming aware of Plaintiff's complaints of Defendant Flores' sexual harassment," (Dkt. No. 160, ¶ 25) (emphasis added) (internal quotation marks omitted), and further suggests that "Defendants may ask about this matter" at his second deposition. (*Id.*). Plaintiff appears to object on the grounds that the requested information is more suitable to being discovered through a deposition. While this objection is not raised with the same repetition as the others, Plaintiff has still failed to meet his burden "to clarify and explain his objections and to provide support for those objections." *Krawczyk v. City of Dallas*, No. Civ.A. 3:03-CV-0584D, 2004 WL 614842, at *6 (N.D. Tex.

Feb. 27, 2004) ("The objecting party may not leave it to the court to sift each interrogatory to determine the usefulness of the answer sought.") (internal quotation marks omitted). Additionally, "[t]he fact that Plaintiff . . . is to give a deposition does not excuse his failure to completely answer Defendant's [i]nterrogatories." *Calderon v. Reederei Claus-Peter Offen GmbH & Co.*, No. 07-61022-CIV, 2008 WL 4194810, at *3 (S.D. Fla. Sept. 11, 2008).

As the Court noted during the hearing, Plaintiff's answer does in fact appear conclusory, ambiguous, and overbroad. (Nov. 16th Hr'g at 10:06 a.m.). Plaintiff again supplemented his response during the hearing, and it appears as though his response to this interrogatory involves violations of rules that TxDOT should or must have in place, rather than specific rules that Plaintiff can cite to. (Nov. 16th Hr'g at 10:07 a.m.) ("Certainly TxDOT has rules that you don't discriminate and retaliate against people, or sexually harass people."). Plaintiff expanded on this answer during the hearing to include facts that Defendant Ball "impeded [Plaintiff's] trying to take self-help action when [he] had to go to the Attorney General's Office," none of which appears in Plaintiff's answer. (Nov. 16th Hr'g at 10:09 a.m.). Even if Plaintiff is correct that "everything that [Defendant Ball] did wrong . . . would take a tome," (*id.*), that still does not excuse Plaintiff's failure to answer the question in more detail than he did. Plaintiff needs to elaborate on why the initial investigation was not resolved properly, why the investigation of subsequent "retaliatory treatment" was not conducted properly, *i.e.,* how Ball failed to follow TxDOT's Rules and Procedures, and should include details regarding Defendant Ball's intentional interference with Plaintiff's "self-help," as he asserted during the hearing.[2] (Nov. 16th Hr'g at 10:06-10:13 a.m.).

---

[2] Plaintiff represented that he would be unable to identify some of the specifics to this response without production of "the full investigative file," which TxDOT has yet to do. (Nov. 16th Hr'g at 10:14 a.m.). The Court understands that Plaintiff might need to later supplement this specific answer once that file has been provided to him.

### 3. *Ball's Interrogatory No. 4*

Defendant Ball's interrogatory asks Plaintiff to "[s]tate all of the facts of what was said during each of [Plaintiff's] conversations with Mr. Ball." (Dkt. No. 160, Ex. 4, at 4). As the Court noted during the hearing, and as the Court has previously stated in writing, specific details of relevant oral communications are better suited for deposition.³ (*See* Dkt. No. 128, at 17). However, Plaintiff should supplement his answer to "describe generally the nature of such communications, the persons with whom such communications were conducted [if applicable], and the time frame within which they occurred." *In re Pabst Licensing GmBH Patent Litig.*, No. CIV. A. 99-MD-1298, 2001 WL 797315, at *11 (E.D. La. July 12, 2011).

### 4. *Ball's Interrogatory No. 10*

With this interrogatory, Defendant Ball seeks to know "whether [Plaintiff is] claiming that Ball discriminated against [Plaintiff] based on [his] race, and, if so, [to] describe when and how he discriminated against [Plaintiff]." (Dkt. No. 160, Ex. 4, at 8). Plaintiff has supplemented this answer by referring Defendant Ball to interrogatory "#7." (*Id.*). As the Court noted during the hearing, Defendants are entitled to an answer from Plaintiff. It appears to the Court that, through this question, Defendant Ball is specifically seeking to know whether Plaintiff is alleging discrimination based on *race*, which would distinguish it from Defendant Ball's previous interrogatory. Furthermore, Plaintiff "cannot answer one interrogatory simply by referring

---

³ *See, e.g., PIC Grp., Inc., v. Landcoast Insulation, Inc.*, No. 1:09cv662-KS-MTP, 2010 WL 4791710, at *5 (S.D. Miss. Nov. 18, 2010) (declining to compel further response to interrogatory asking for oral communications because it was "unreasonably and unduly burdensome and the least efficient way to obtain the information," and Plaintiff could inquire as to oral communications in depositions); *United States v. Int'l Longshoremen's Ass'n, AFL-CIO*, No. CV05-3212(ILG)(VVP), 2006 WL 2014093, at *2 (E.D.N.Y. July 18, 2006) ("The court agrees that information about communications between defendants concerning the subject matter of the action is best explored through depositions rather than interrogatories . . . ."); *Pirollo v. First Union Nat'l Bank*, No. Civ.A. 99-4585, 2000 WL 1052138, at *3 (E.D. Pa. July 25, 2000) (finding that an interrogatory requesting details of any meetings or communications in which plaintiff's position was discussed would be more efficiently elicited by depositions of appropriate decision makers); *Sussman v. Paradigm Partners, Inc.*, No. 91 Civ. 2891 (KMW), 1993 WL 385752, at *2 (S.D.N.Y. Sept. 22, 1993) ("Depositions are surely a more efficient means than interrogatories of eliciting information about oral conversations.").

defendants to another equally unresponsive answer." *Martin*, 85 F.R.D. at 315 (citing another source); *see also Steadfast Ins. Co. v. Golden Restaurants, Inc.*, No. 3-08-CV-1383-P, 2009 WL 1683605, at *2 (N.D. Tex. June 16, 2009) ("Defendant may not incorporate one interrogatory answer when answering another interrogatory. Rather, a complete narrative answer must be provided in response to each interrogatory."); *Dana Corp.*, 1994 WL 228537, at *1 (referring to a series of cases which support the proposition that an answer to an interrogatory "should not refer to . . . other interrogatories"). As such, Plaintiff needs to provide Defendants with an answer to this question.

### 5. *Saenz's Interrogatory Nos. 8, 9, and 10*

Defendant Saenz requests for Plaintiff to "provide all of the facts which support" two of Plaintiff's claims against him. (*See* Dkt. No. 160, Ex. 3, at 6). Plaintiff's response to Defendant Saenz's eighth interrogatory was clarified during the hearing. (*See* Nov. 16th Hr'g at 10:42-10:46 a.m.). Plaintiff should reduce this same response to writing for Defendants, such that the interrogatory will "be answered separately and fully in writing under oath." Plaintiff also represented that there were no differentiating facts to support his claims of discrimination against Defendant Saenz based on sex and those based on race, (Nov. 16th Hr'g at 10:48 a.m.), and thus for the ninth and tenth interrogatories, Plaintiff should clarify in his responses that this is the case.

### 6. *Saenz's Interrogatory No. 17*

To the extent that Defendant Saenz's interrogatory seeks details regarding "everything that was said during [Plaintiff's] telephone conversation with Amadeo Saenz," the request appears to be better suited for the upcoming deposition of Plaintiff, as noted above. However,

Plaintiff needs to provide a response which outlines the general nature of the conversation, also described above.

### 7. Ebert's Interrogatory No. 4

Defendants seek to have Plaintiff supplement his response to include "specifics . . . dates, people, and events." (Nov. 16th Hr'g at 10:51 a.m.). Plaintiff stated during the hearing that his allegations against Defendant Ebert for discriminating are one and the same as his allegations against Defendant Ebert for retaliating, and thus much of his answer for this interrogatory would mirror his answer to the third interrogatory. (Nov. 16th Hr'g at 10:53-10:54 a.m.). However, the third interrogatory asks Plaintiff to "[s]tate when, how, and to whom" he complained about Defendant Ebert's retaliation, whereas the fourth interrogatory requests that Plaintiff "[d]escribe in detail how Ebert discriminated against" Plaintiff. The questions posed seem rather distinct, and thus the Court fails to see how the two answers can be identical. Plaintiff should, at the least, also explain how "Defendant Ebert . . . refus[ed] to allow Plaintiff to proceed in the hiring processes for various positions for which Plaintiff applied," and how he "improperly and illegally applied qualification standards that were not applicable to the applications and/or positions for which Kleppinger applied." Plaintiff should also detail in writing that his claims for discrimination and retaliation are based on the same action, and inaction, by Defendant Ebert.

### 8. Ebert's Interrogatory No. 10

Defendants note in their motion that Plaintiff "has failed to provide any answer to this Interrogatory." (Dkt. No. 156, at 6). As with many of the other responses, Plaintiff clarified his position regarding this interrogatory during the hearing, and explained that Defendant Ebert's liability stems not only from Plaintiff's direct communication with him, but from his supervisory role in the human resources department. (*See* Nov. 16th Hr'g at 10:59-11:02 a.m.). Plaintiff

alluded to a number of specifics, specifics which are not included in Plaintiff's interrogatory response. Bearing in mind that "[t]he candor required is a candid statement of the information sought," *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616 (5th Cir. 1977), Plaintiff should supplement his response to include this candor and specificity.[4]

### C. Defendants' Requests for Production

Before turning to the specific requests for production that remain unresolved, the Court needs to address Defendants' "general objection to all of the responses," (Nov. 16th Hr'g at 9:28 a.m.), in that the responses do not reference "dates or bate stamp numbers of specific documents." (Dkt. No. 156, at 15). Defendants therefore seek to have Plaintiff identify, by bates numbers, which documents are responsive to each specific document request. Plaintiff responds[5] by informing the Court of the current state of all these relevant documents, which he referred to as "in [ ] shambles," (Dkt. No. 160, ¶ 46), due to the actions of the copying company that Defendants chose. (*See also* Nov. 16th Hr'g at 9:31 a.m.). Plaintiff also argues that the federal rules do not require him to "pick which documents go to which of [Defendants'] requests for production," because they have already been produced in the "manner in which they are kept."[6] (Nov. 16th Hr'g at 9:32-9:33 a.m.).

---

[4] Presumably, the parties can determine amongst themselves whether or not Defendant Salgado's personnel file has been produced, if so ordered by the Court, since that was also a point of contention during the hearing.

[5] Plaintiff also expressed reservations at having to re-produce any documents, as all of the documents were made available to Defendants prior to the instant requests for production were submitted to Plaintiff. (Nov. 16th Hr'g at 9:29-9:32 a.m.). He explained that said re-production would "come at a significant cost" to him. (Nov. 16th Hr'g at 11:13 a.m.). However, Defendants acknowledged to the Court that they have copies of "the 7,000" documents Plaintiff previously produced. (Nov. 16th Hr'g at 9:33 a.m.). Thus, the Court will not require Plaintiff to re-produce any such documents, and costs should therefore not be a factor in complying with the Court's present order.

[6] Plaintiff alternatively suggests that identifying documents in response to requests for production would be protected work-product. (Nov. 16th Hr'g at 9:33 a.m.). Although the Fifth Circuit has seemingly not addressed this issue directly, "it has suggested in dicta that the mere compilation of documents by itself is not opinion work product." *Fisher v. Halliburton*, Nos. H-05-1731, H-06-1971, 2009 WL 483890, at *1 (S.D. Tex. Feb. 25, 2009) (citing *In re Int'l Sys. & Controls. Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982)). Furthermore, because the "touchstone of the work-product inquiry is whether the demand is made with the precise goal of learning what the

11

*1. Production of Documents as Kept "In the Usual Course of Business"*

While Plaintiff is correct in asserting that Rule 34 requires that a party either "produce documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request," it is unclear that he is entitled to utilize this provision of the rule. Moreover, there is also a corresponding burden Plaintiff must meet in exhibiting to the Court that he has in fact produced the documents as they are kept "in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E)(i) (emphasis added). This burden Plaintiff has failed to meet.

Rule 34(b) does not explain or define what it means to produce documents "as they are kept in the usual course of business." Because the advisory committee notes do not provide this clarification,[7] there are conflicting and different views among the district courts in when this provision of the rule can be utilized by a party. One district court within the Fifth Circuit has interpreted the plain language of the rule to require that the party must be a business in order to take advantage of this provision of the rules. *See Bell v. Hercules Liftboat Co., L.L.C.*, No. 11-332-JJB-SCR, 2012 WL 1190171, at *1 (M.D. La. April 9, 2012) (stating "the plaintiff is not a business," and consequently "the plaintiff is not relieved of her obligation to identify the documents responsive to each request."). Further, another district court outside of this Circuit, analogizing Rule 34 to Federal Rule of Evidence 803(6), concluded that the producing party must either be a commercial entity or the records must have resulted from a "regularly conducted

---

opposing attorney's thinking or strategy may be," "compilations of documents that merely support the factual allegations of a complaint reveal no more than that already revealed by the filing of the complaint." *Kodak Graphic Commc'ns Canada Co. v. E.I. du Pont de Nemours and Co.*, No. 08-CV-6553T, 2012 WL 413994, at *5 (W.D.N.Y. Feb. 8, 2012) (citing *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009)).

[7] The advisory committee notes instead indicate the rationale behind this added sentence, which is to prevent production of critical documents in a manner that might obscure their significance. Fed. R. Civ. P. 34(b) advisory committee notes, 1980 amendment. "Clearly, the underlying assumption was that production of records as kept in the usual course of business ordinarily will make their significance pellucid." *CooperVision, Inc. v. Ciba Vision Corp.*, No. 2:06CV149, 2007 WL 2264848, at *4 (E.D. Tex. Aug. 6, 2007).

activity." *Collins & Aikman Corp.*, 256 F.R.D. at 412-13. In that case, documents collected by the SEC through its investigative capacity were at issue. *See id.* at 413. The district court in *Collins* recognized that, in many instances, a Government entity acts in the same manner as a commercial entity. *Id.* In those instances, the records are presumptively "created and maintained in an efficient fashion such that the production as they are kept in the ordinary course of business would allow for easy analysis of –for example—a contract, False Claims Act, or a Title VII claim." *Id.* However, the court concluded that the SEC collecting documents in its investigative capacity was not such a "routine and repetitive" nature to fall within the scope of the "usual course of business." *Id.* As such, those investigative documents needed to be organized or labeled to correspond to each of the defendant's demands or requests. *See id.*

In the instant case, Plaintiff is not an entity that obtains records in the ordinary course of business. Further, for the undersigned to conclude that his gathering of documents in pursuing his claims against Defendants resulted from a "regularly conducted activity" would likely be a stretch. On its face, it appears that Plaintiff's actions in pursuing his claims are tantamount to his own investigatory process similar to the SEC acting in its investigative capacity, which was deemed not an activity closely related to a commercial enterprise.

For argument's sake, even if the Court were to conclude, under these facts, that Plaintiff could avail himself of this provision and produce his documents as they are kept "in the usual course of business," the undersigned notes that courts have consistently held that a party who chooses to produce documents in this manner bears the burden of showing the court that "the documents were in fact produced in that manner," and thus "a mere assertion that they were so produced is not sufficient to carry that burden." *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 540-41 (D. Kan. 2006); *see S.E.C. v. Kovzan*, No. 11-2017-JWL, 2012 WL 3111729, at *9

(D. Kan. July 31, 2012) ("[I]t is clear . . . that simply producing a mass of documents with assurance that they are produced in the same manner as they are kept . . . does not automatically satisfy a party's obligations under Rule 34(b)."); *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008) (maintaining that the party had failed to fulfill its burden, because the "attorney's statement to the effect that the documents have been assembled" as maintained in the usual course of business, without further elaboration, was insufficient); *CooperVision*, 2007 WL 2264848, at *5 (determining plaintiff's "assertion that it produced documents in the ordinary course of business is unsupported *ipse dixit*," and thus requiring plaintiff to provide individualized and numbered responses); *Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.*, No. 03-cv-5340 JF (RS), 2006 WL 5349265, at *3 (N.D. Cal. Feb. 8, 2006) (finding "Google's unsupported statement that the . . . files were produced 'as they were kept in the usual course of business' . . . fails to fulfill the requirements set forth" in Rule 24(b)); *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 618 (D. Kan. 2005) (because of the "unsupported assertion" that documents were produced as kept in the ordinary course of business, concluding that the defendant had not satisfied its burden).

  To determine whether a producing party has met this burden, courts look to the pleadings and exhibits submitted, seeking to know "the origin" of the documents, *Cardenas*, 230 F.R.D. at 618, and "the manner in which the referenced documents were produced[,] *i.e.,* where these documents were maintained or who maintained them and whether the documents came from one single source or file or from multiple sources or files." *Johnson*, 236 F.R.D. at 540; *see also Pass & Seymour*, 255 F.R.D. at 334-35, 337. Although Plaintiff described to the Court the organized nature of his documents, pointing out the files were "in file folders . . . marked . . . [and] separated left to right side," Plaintiff has not otherwise provided the Court with any

information or evidentiary proof to establish that the documents were produced according to the standards elaborated by Rule 34(b). (*See* Nov. 16th Hr'g at 9:30-9:31 a.m.). Further, "merely categorizing the documents produced does not, without some further explanation, satisfy the requirement that they be produced as kept in the usual course of business." *See American Blind*, 2006 WL 5349265, at *3-4 (citing *Cardenas*, 230 F.R.D. at 618) (concluding Google had failed its burden despite the fact that Google had "colored and alphabetized" the documents to assist the other party in navigating through them); *Cardenas*, 230 F.R.D. at 618 (finding that the party's grouping of the documents into twelve categories, with each category identified by bates numbers, was not equivalent to production of the documents as kept in the course of business).

Considering the foregoing, assuming *arguendo* that Plaintiff could utilize this provision of the rule, the Court cannot find that Plaintiff has met his burden in establishing that he has produced the documents "as they are kept in the usual course of business." Additionally, as Plaintiff pointed out in his own motion, the Court has previously ordered Defendants "to identify which documents within those previously produced are responsive" to Plaintiff's requests for production. (*See* Dkt. No. 158, ¶ 10). This fact serves as another reason why the Court finds it appropriate to order Plaintiff to do the same. Because the documents have already been provided, Plaintiff need not re-produce any documents.[8] In order to comply with the rule, Plaintiff need identify by bates numbers which documents are responsive to each request.

   2. *Serna's Request for Production No. 12*

With respect to Defendant Serna's request for production, Defendants maintain that "Plaintiff has refused to provide any specific documents . . . ." (Dkt. No. 156, at 15). Plaintiff in return contends that the request is "overbroad and unduly burdensome," (Dkt. No. 156, Ex. 6, at

---

[8] *See supra* note 5. However, this statement is contingent on Plaintiff in fact having produced all of the documents. As will shortly be discussed, if Plaintiff is withholding any documents, *e.g.*, emails, then he must supplement his production with those documents.

7), and that "all 7,000 documents [previously produced] are relevant to the claims against Mr. Serna." (Nov. 16th Hr'g at 9:56 a.m.). While this specific request seeking "any and all documents that support your allegations against Serna" does in fact appear overbroad, because Plaintiff's objections are deemed overruled, as discussed previously, the Court will only focus on Plaintiff's latter representation that every single document he has produced is relevant to the claims against Defendant Serna. While the Court recognizes Plaintiff's general argument that Defendant Serna is liable by virtue of his supervisory position within TxDOT, during the hearing, Plaintiff specifically identified "an entire package" he sent to Defendant Saenz, a letter from Defendant Serna, several writings to Defendants Ebert and Ball, as well as additional filed grievances, all of which specifically support his claim against Defendant Serna. (*See* Nov. 16th Hr'g at 9:48, 9:50 a.m.). It seems apparent by virtue of this reference to specific documents that there are certain documents which Plaintiff believes support his claims against Defendant Serna more so than other documents. Thus, Plaintiff should reference these specific documents which support his claim against Defendant Serna by bate stamp numbers.

### 3. Ball's Request for Production No. 12

Defendants seek notes and emails "of any conversations [Plaintiff] had with Mr. Ball concerning [the] allegations in [Plaintiff's] most recent complaint." (Dkt. No. 156, Ex. 8, at 7). Plaintiff maintains that he has produced the documents in "response to the meeting" with Defendant Ball, and all other emails are still in Defendants' possession. (Nov. 16th Hr'g at 10:27 a.m.). Plaintiff also refers to his "General Objections," which the Court has deemed overruled. (*See* Nov. 16th Hr'g at 10:28 a.m.; Dkt. No. 156, Ex. 8, at 7). Thus, if Plaintiff is withholding certain of these notes or emails in response to this request, Plaintiff needs to turn those over to Defendants. If the responsive documents are among the seven thousand that

Plaintiff has already turned over, then Plaintiff need only identify, by bates numbers, those documents responsive to this request.

### 4. Ball's Request for Production Nos. 13-16

In this series of production requests, Defendant Ball asks for "all of the emails that [Plaintiff] sent from his TxDOT account to his personal account or to his house." (Nov. 16th Hr'g at 10:29 a.m.). Defendants assert that this is relevant information, because these emails were the bases for Plaintiff's termination from his employment. Although there "were over four hundred emails when [TxDOT] did the investigation, somehow those got deleted," (Nov. 16th Hr'g at 10:31 a.m.), and thus Defendants seek the emails from Plaintiff. Among other things,[9] Plaintiff argues that production of the emails would "be cumulative and duplicative of what [Defendants] have been ordered to produce." (Nov. 16th Hr'g at 10:32 a.m.). However, as the Court pointed out during the hearing, Plaintiff's contention is incorrect if, in fact, many of these emails were deleted, as Defendants avow. What is "in the sent files at TxDOT" is irrelevant to, and likely distinct from, what is in Plaintiff's inbox in his home email accounts. (*See* Nov. 16th Hr'g at 10:33 a.m.). As such, Plaintiff is hereby ordered to provide said emails to Defendants.

### 5. Ebert's Request for Production No. 12

Defendant Ebert asks Plaintiff to "produce any and all documents that pertain to any and all conversations [Plaintiff] had with Ebert regarding any of your allegations." (*See* Dkt. No. 156, Ex. 5, at 7). Plaintiff objects on the basis that Defendant Ebert is seeking documents more readily accessible by Defendants. However, this contention would seem to rely on the

---

[9] Plaintiff also maintains that, because Defendant Ball had "nothing to do with [Plaintiff's] termination," those emails "have absolutely nothing to do with the claims or defenses of Mr. Ball," nor would they lead to any admissible evidence involving Defendant Ball. (Nov. 16th Hr'g at 10:29-10:30 a.m.). While the Court understands Plaintiff's position, it is also the Court's understanding that Defendant TxDOT has sent a similar request for production, which Plaintiff contends exceeds the discovery request limits. (Nov. 16th Hr'g at 10:32 a.m.). If this request does exceed Defendant TxDOT's limit, Defendant TxDOT has the option to seek leave of the court to propound additional requests for production.

assumption that Defendant Ebert is only seeking emails in the possession of Defendant TxDOT. As previously noted, there is the distinct possibility that Plaintiff sent emails regarding these conversations, which are not in the possession of Defendants. There is also the possibility that there are documents, other than emails, which respond to this request for production. Of course, this is information within Plaintiff's knowledge, as opposed to the Court's. If Plaintiff has documents responsive to this request, he should provide them.

## II.  CONCLUSION

Accordingly, Defendants' motion regarding Defendant Serna's Interrogatory Nos. 2, 8, 10, 14, 15, and 18 is GRANTED. Defendants' motion regarding Defendant Ball's Interrogatory Nos. 3, 4, and 10 is GRANTED. Defendants' motion regarding Defendant Saenz's Interrogatory Nos. 8, 9, 10, and 17 is GRANTED. Defendants' motion regarding Defendant Ebert's Interrogatory Nos. 4 and 10 is GRANTED. Defendants' motion regarding Defendant Serna's Request for Production No. 12 is GRANTED. Defendants' motion regarding Defendant Ball's Requests for Production Nos. 12-16 is GRANTED. Defendants' motion regarding Defendant Ebert's Request for Production No. 12 is GRANTED. The remaining interrogatory requests and requests for production are DENIED AS MOOT, as Defendants represented to the Court during the hearing that they were satisfied with Plaintiff's responses to the remaining requests.

Plaintiff represented to the Court that certain personal events would require his attention in the near future. As such, Plaintiff has 30 days from the date of this Order to comply with what is contained herein.

IT IS SO ORDERED.

SIGNED this 3rd day of January, 2013, at Laredo, Texas.

_____
J. SCOTT HACKER
United States Magistrate Judge