U.S. MAGISTRATE COURT
JSH – SDTX
FILED

JAN 0 4 2013  JSH

David J. Bradley, Clerk
Laredo Divison

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| EDDIE KLEPPINGER, JR., | § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 5:10-cv-124 |
| TEXAS DEPARTMENT OF TRANSPORTATION, *et al.*, | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is "Plaintiff Eddie Kleppinger, Jr.'s Motion for Sanctions Against Defendant TXDOT Under Rule 37, Federal Rules of Civil Procedure for Failure to Comply with the Court's Order of March 4, 2012 and Brief," (Dkt. No. 158), filed on May 14, 2012. For the reasons set forth below, Plaintiff's motion is DENIED.

## I. BACKGROUND

On March 4, 2012, the Court issued an Order, (*see* Dkt. No. 122), ruling on Plaintiff's Motion to Compel. (*See* Dkt. No. 70). Within said Order, the Court instructed Defendant TxDOT, "in addition to the documents produced by Defendant," to provide Plaintiff with documentation regarding:

> (1) which specific rule(s) he allegedly violated that formed the basis for his termination; (2) any alleged rule violations Defendant will use to support any adverse employment actions it took against Plaintiff in defending this lawsuit; (3) in what form and by who Plaintiff was informed of this rule(s) (*i.e.*, Human Resources Manual, provided at a training, etc.); and (4) when Plaintiff was informed of this rule(s).

(Dkt. No. 122, at 31). This above-mentioned documentation was intended to respond to Plaintiff's Interrogatory No. 11 and Request for Production No. 35.

1

The Court also ordered TxDOT "to identify which documents within those previously produced that are responsive to Plaintiff's Requests for Production Nos. 37-50." (*Id.* at 32). The Court acknowledged that certain affirmative defenses would not require documents, other than statutes and case law that Plaintiff would be able to access on his own; therefore the Court clearly noted that "if there are no responsive documents, Defendant must specifically advise Plaintiff that no responsive documents exist." (*Id.* at 33).

Finally, addressing Plaintiff's request for communications and documents available on electronically stored information ("ESI"), the Court ordered TxDOT "to produce any readily accessible ESI including, but not limited to, e-mails that are relevant to this lawsuit or that are reasonably calculated to lead to the discovery of admissible evidence." (*Id.* at 29). The Court then ordered the parties to confer and file advisories proposing search terms for TxDOT to use in its search for ESI. (*Id.*).

In his present motion, Plaintiff claims that TxDOT has not complied with the Court's March 4th Order. (*See* Dkt. No. 158, ¶¶ 11-17). Plaintiff thus requests that the Court sanction TxDOT "in a manner that the Court deems appropriate and as provided by Rule 37, Federal Rules of Civil Procedure." (*Id.* ¶ 22). TxDOT states it has complied with the Order and that Rule 37 sanctions are not appropriate. (Dkt. No. 159, at 1).

## II. ANALYSIS

Federal Rule of Civil Procedure 37(b) empowers the courts to impose a broad range of sanctions for failures to obey discovery orders. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (citation omitted). "The district court 'has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct.'" *Id.* (citing *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990)). However, a finding of bad faith or willful

2

misconduct is required to support the severest remedies under Rule 37(b) – striking pleadings or dismissal of a case. *Pressey*, 898 F.2d at 1021. "Lesser sanctions do not require a finding of willfulness." *Smith & Fuller, P.A.*, 685 F.3d at 488 (citing *Chilcutt v. United States*, 4 F.3d 1313, 1323 n.23 (5th Cir. 1993)).

### A. Interrogatory No. 11 and Request for Production No. 35

On March 30, 2012, TxDOT mailed to Plaintiff a spreadsheet entitled "Exhibit A," which delineated "Documents Already Produced or Produced Herein,"[1] along with a CD containing the corresponding documents identified on Exhibit A.[2] Plaintiff now claims that TxDOT's supplemental production fails to mention "any specific sections of any TxDOT manuals or policy or rule documents that may contain relevant policies, rules, procedures that TxDOT alleges that Plaintiff violated." (*See* Dkt. No. 158, ¶ 13). In addition, Plaintiff argues that TxDOT has not produced any new documents in addition to the ones already produced. (*Id.* ¶ 16). Thus, Plaintiff contends that TxDOT has not complied with the Court's order to produce documents "in addition" to the documents that have already been produced. (*Id.*).

First, Plaintiff ignores the fact that TxDOT has produced at least one document that identifies by section the violations "that formed the basis of his termination . . . ." (Dkt. No. 122, at 31). Specifically, TxDOT has produced Plaintiff's personnel file, which TxDOT represents contains the "Notice of Disciplinary Action." (Dkt. No. 159, at 2; *see also* Dkt. No. 158, Ex. A). The Notice of Disciplinary Action specifically demarcates the specific rules, and the sections containing those rules, that Plaintiff's behavior violated. Hopefully, counsel has previously

---

[1] TxDOT counsel's transmittal cover letter states that this package was sent in response to the Court's Order issued on March 12, 2012. (*Id.* Ex. 1). In its response, TxDOT clarifies that this letter should have referred to the Court's March 4th Order. (*Id.* at 2).

[2] The spreadsheet indicated that certain manuals identified in Exhibit A would be "available for inspection and copying at a mutually agreeable date and time." (Dkt. No. 159, Ex. A, at 2).

3

communicated with Plaintiff that the "Notice of Disciplinary Action" in his personnel file sets out these violations.[3] Thus, TxDOT has technically complied with the portion of the Court's March 4th Order pertaining to Interrogatory No. 11 and Request for Production No. 35.

Second, it appears to the Court that Plaintiff is misinterpreting its Order requiring TxDOT to produce additional documents, perhaps due to the imprecise language of the Court's Order. (*See* Dkt. No. 122, at 31). Because the Court has little, if any, knowledge on what has or has not already been produced in discovery, it intended for TxDOT to either provide Plaintiff with additional documentation supporting TxDOT's allegations regarding Plaintiff's violations of its policies, or to refer Plaintiff to those documents already produced, which could support those allegations.

Here, Defendant TxDOT represents to the Court that it had previously produced some of these files; however, in compliance with the Court's March 4th Order, TxDOT specifically identified these documents and provided additional documents supporting its allegations of Plaintiff's violations of its policies. TxDOT also has listed five subsections of documents that it alleges support the adverse employment actions taken by Defendant TxDOT. (*See* Dkt. No. 158, Ex. A; *see also* Dkt. No. 159, at 3-4). With this understanding, the Court concludes that TxDOT has complied with its Order to "provide Plaintiff with documentation or refer him to documents . . . ." (*See* Dkt. No. 122, at 31). As such, for the reasons set forth above, Plaintiff's request for sanctions relating to TxDOT's production in response to the Court's March 4th Order relating to Interrogatory No. 11 and Request for Production No. 35 is DENIED.

---

[3] TxDOT claims that the Notice of Disciplinary Action was previously handed to Plaintiff on February 23, 2011. (Dkt. No. 159, at 2). The undersigned notes that just because Plaintiff already had this document back in February 2011, it does not necessarily follow that TxDOT has satisfied its discovery obligations regarding Defendant's discovery requests, *i.e.*, his interrogatory or his request for production.

### B. Requests for Production Nos. 37-50, Documents Supporting TxDOT's Affirmative Defenses

Plaintiff claims "nowhere in the subsection referencing Defendant TxDOT's affirmative defenses [in Exhibit A] does Defendant TxDOT state which documents are supportive of which affirmative defense." (*See* Dkt. No. 158, ¶ 14). Plaintiff further argues that TxDOT has acted in "bad faith" by listing eleven manuals without indicating which sections or subsections apply to its affirmative defenses. (*Id.*). Plaintiff contends that though certain sections in the manuals produced by TxDOT may be relevant to its affirmative defenses, it is "not credible" that the entire manuals support its position. (*Id.*).

Here, TxDOT simply produced documents purportedly supporting its affirmative defenses under the heading "Documents to Support the Affirmative Defenses" without separately identifying the documents that supported each affirmative defense. (*See* Dkt. No. 159, Ex. A). The Court notes that the language in its March 4th Order, (*see* Dkt. No. 122, at 32), is vague and does not explicitly require TxDOT to label and organize these documents to correspond to each of its affirmative defenses. Nor did the Court require TxDOT to identify specific sections in manuals that may support its affirmative defenses. Thus, the Court declines to sanction Defendant for failing to do what the Court did not specifically order.

Notably, in its "Response to Plaintiff's Motion for Sanctions," Defendant TxDOT has informed the Court and Plaintiff that most of its affirmative defenses "are legal defenses which do not involve documents." (Dkt. No. 159 at 9). While required to do so, it is unclear whether TxDOT notified Plaintiff of this in its previous production of documents. If there was a failure, the Court believes that it was likely inadvertent and not an act of bad faith. As such, Plaintiff's request for sanctions relating to TxDOT's production in response to Requests for Production Nos. 37-50 is DENIED.

More importantly, at the Court's February 3rd hearing and in its subsequent March 4th Order, the Court was attempting to find some common ground as to Plaintiff's overly broad discovery requests and Defendants' various objections. Yesterday, the Court issued an order requiring Plaintiff, for documents that he had already produced, to further identify by bates numbers which documents were responsive to each of Defendants' requests. (*See* Dkt. No. 195). The Court believes that it is fair to require Defendants to do the same.

The undersigned notes that TxDOT's response (Dkt. No. 159 at 5-9) sets out that documents referenced in Exhibit A applies to the tenth affirmative defense ("qualified immunity"), the eleventh affirmative defense ("legitimate, non-discriminatory and non-retaliatory reasons"), and the fifteenth affirmative defense ("official immunity") as these defenses relate to either TxDOT or the individual Defendants. In other words, Exhibit A is responsive to Plaintiff's request for production numbers 45, 46, and 50. There are no documents responsive to Plaintiff's request for production number 36, 37, 38, 39, 40, 41, 42, 43, 44, 47, 48, and 49.

However, the Court believes that if there are specific sections <u>within the various listed manuals</u> contained in <u>Exhibit A</u> that either TxDOT or the individual Defendants intend on utilizing to support each of their affirmative defenses, they should so indicate or specify. It hardly seems fair that Plaintiff should have to take these manuals and try to determine on his own what policies that Defendants intend on using to support their affirmative defenses.

    C.    *Requests for Production Nos. 6, 9, 12, 13, 19, 22 and 25, Production of Readily Accessible ESI*

Plaintiff contends that TxDOT has failed to comply with the Court's Order to "produce any readily accessible ESI . . . ." (Dkt. No. 158, ¶ 17). In response, TxDOT states that, after "using the search term 'Kleppinger'" to search for responsive emails, it has produced emails

from the email accounts of Defendants George Ebert, Amadeo Saenz, Doris Howdeshell, Marco Salgado and Yolanda Arriaga. (*See* Dkt. No. 159, at 10). The Court's requirements regarding the production of ESI have since been altered by this Court, and Defendant TxDOT has complied with these various court orders relating to the production of ESI, the most recent of which was issued on October 29, 2012. (*See* Dkt. No. 183). As such, Plaintiff's request for sanctions relating to TxDOT's production of "readily accessible ESI" is DENIED.

## III. CONCLUSION

For the reasons stated above, "Plaintiff Eddie Kleppinger, Jr.'s Motion for Sanctions Against Defendant TXDOT Under Rule 37, Federal Rules of Civil Procedure for Failure to Comply with the Court's Order of March 4, 2012 and Brief," (Dkt. No. 158), is DENIED.

However, if there are rules or violations that Plaintiff allegedly violated that are not represented on the "Notification of Disciplinary Action" that Defendants intend on using at trial, the Court ORDERS that Defendant should inform Plaintiff and provide him with the related documentation. Likewise, if there are specific sections within the various listed manuals contained in Exhibit A that either TxDOT or the individual Defendants intend on using at trial to support each of their affirmative defenses, they SHOULD so indicate or specify. The deadline to comply with this order is January 28, 2013.

IT IS SO ORDERED.

Signed this 4th day of January, 2013.

J. SCOTT HACKER
United States Magistrate Judge